HART POTATO GROWERS ASSOCIATION *v.* GREINER.

1. CORPORATIONS—CONTRACTS—VALIDITY—STATUTES.
    The provisions of 3 Comp. Laws 1915, § 11352, that all contracts made after a certain date by any corporation which had not first complied with said act should be wholly void, has no application to corporations organized under Act No. 84, Pub. Acts 1921.

2. SAME—CONTRACTS MADE BY INCORPORATORS PRIOR TO INCORPORATION VALID.
    Under the provisions of part 1, chap. 2, § 2, Act No. 84, Pub. Acts 1921, contracts made by incorporators preliminary to the filing of articles of incorporation under said act, are not invalid because made prior to such filing.

3. SAME—CONTRACTS—MUTUALITY—CONTRACT SIGNED BY INCORPORATORS AND RATIFIED BY CORPORATION BINDING.
    A contract between an individual and a proposed corporation, which was not intended to become binding until certain conditions were met by the incorporators, became absolute and binding upon both parties after the conditions had been met and the action of the incorporators in signing it had been "approved, ratified, and adopted" by action of the board of directors, and, therefore, the claim that the contract was lacking in mutuality because binding on the individual only is without merit.

Error to Oceana; Barton (Joseph), J.    Submitted October 13, 1926.    (Docket No. 83.)    Decided December 8, 1926.

Assumpsit by the Hart Potato Growers Association against Ed. Greiner for breach of a contract for the sale of potatoes.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

Corporations, 14 C. J. §§ 290, 292; 17 A. L. R. 452; 7 R. C. L. 81; 2 R. C. L. Supp. 293; 4 R. C. L. Supp. 464; 5 R. C. L. Supp. 393.

*Wetmore & Bagley,* for appellant.

*Penny & Worcester,* for appellee.

McDONALD, J.   This is an action to recover damages arising from breach of contract for the co-operative marketing of potatoes.   The plaintiff had judgment and the defendant has brought error.

The case was tried on a stipulated statement of facts from which it appears that the plaintiff is a nonprofit co-operative association, organized under chapter 4, part 2, of Act No. 84, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 9053 [78] *et seq.*), for the purpose of grading and preparing potatoes for shipment and sale; for advertising, marketing, selling, and shipping; and for fostering and encouraging the interest of farmers in the development of co-operative activities in agriculture.   It is a member of the Michigan Potato Growers Exchange, also a nonprofit corporation having a membership of about 75 local associations.

When it was desired to organize the plaintiff association, the promoters, in company with solicitors from the Michigan Potato Growers Exchange, called upon the potato growers in the market area of the village of Hart, and secured preliminary contracts with an association to be formed, the contracts not to become operative until similar contracts were secured from the growers of 50 per cent. of the commercial potato acreage within the market area.   The defendant signed one of these contracts on the 20th of June, 1925.   Before July 10, 1925, similar contracts had been secured from other growers covering more than 50 per cent. of the commercial acreage of all potatoes grown within the market area.   The defendant was then notified, in writing, that his contract had become operative and binding.

On June 23, 1925, a preliminary organization meeting was held at which the name of the plaintiff associa-

tion was adopted.    Articles of association were signed September 17, 1925, but were not filed with the secretary of State until October 12, 1925, and with the county clerk on October 15, 1925.    The contracts gave the plaintiff the exclusive right to handle and market all potatoes grown by its members within the Hart market area, and provided for the payment of damages by the growers if they failed to comply in that particular.    It is conceded that the defendant violated this provision of the contract in the month of November, 1925, by selling potatoes to persons other than the plaintiff association.    To recover damages for this breach the plaintiff brought its action.

The sole question involved is as to the validity of the contract.    It is first contended by counsel for the defendant that when the contract was made the plaintiff had no legal existence, that it was not authorized to transact any corporate business, had not complied with the law by paying the franchise fee which such a corporation must pay, and that, therefore, the contract was wholly void under section 11352, 3 Comp. Laws 1915, which declares that "all contracts made in this State after the first day of January, 1894, by any corporation which has not first complied with the provisions of this act shall be wholly void."

We think that section of the statute has no application to this contract.    The plaintiff company was organized under Act No. 84, Pub. Acts 1921.    Part 1, chap. 2, § 2 (Comp. Laws Supp. 1922, § 9053 [12]), provides for the filing of the articles of association, payment of franchise and certificate fees, and the issuance by the secretary of State of his written authority to the corporation to commence business. Immediately following this is the proviso:

"*Provided, however,* That no contract made by the incorporators preliminary to the filing of such articles shall be deemed to be invalid or ineffectual because made prior to such filing, and all property held by

such incorporators for the benefit of the proposed corporation shall be deemed to be property of such corporation for the purpose of complying with section one of this chapter."

This provision of the statute settles the question adversely to the defendant's contention.

It is further argued by counsel for the defendant that the contract is not binding or enforceable because it is unilateral; that it is a one-party contract, wanting in mutuality, signed in the first instance by the defendant alone and later by the plaintiff at a time when it had no corporate existence.

Their position on this question is stated in their brief as follows:

"It is admitted that at the time Ed. Greiner signed this so-called contract, that the name of the first party had not yet been determined.  It stood as a contract between Ed. Greiner and an unnamed first party. That later a meeting was held at which Ed. Greiner was not present and it was then determined that the name of the first party to said contract should be 'Hart Potato Growers Association.'  And later, and not until the 12th day of October, was there such a corporation as the plaintiff.  Thus from June 20th to October 12th, 1925, there was only one party to this so-called contract.  Certainly until October 12th, 1925, this was a one-party contract with no one."

It is true that the so-called contract did not become binding and operative when the defendant signed it. It was not intended that it should.  In fact, it was not a contract at all, but merely an open and continuing offer which ripened into a contract when the conditions were met by those who were promoting the plaintiff company.  These conditions were that they should organize a co-operative marketing association and secure similar contracts from other growers representing 50 per cent. of the commercial acreage in the Hart area.  They accomplished both of these

236—Mich.—41.

things, but before the organization was legally perfected the incorporators signed the name of the proposed corporation to the contract.     The statute, pt. 1, chap. 2, § 2, Act No. 84, Pub. Acts 1921, declares such preliminary organization contracts by incorporators to be legal.     But, regardless of this statute, they become contracts enforceable by and against the corporation when the board of directors by resolution "approved, ratified, and adopted" them.

On his part the defendant recognized and treated the contract as valid by delivering potatoes to the plaintiff after he had been notified of its acceptance. Our conclusion is that it is valid and binding.     The defendant made an offer in writing to enter into a contract with a corporation to be formed, and he kept the offer open until it was accepted by the incorporators.     We think, in view of the language of the statute, it then became effective.     But, if not then, it became effective beyond question when accepted and adopted by the corporation after it became legally entitled to commence its corporate business.     17 A. L. R. p. 462; 14 C. J. p. 257; 7 R. C. L. p. 81.

The judgment of the circuit court is affirmed, with costs to the plaintiff.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.