## MASTAW v NAIUKOW

Docket No. 45147. Submitted March 6, 1981, at Detroit.—Decided April 7, 1981.

John J. Mastaw and Osvaldo Alva brought an action against Peter Naiukow, Barry Benson, and the City of Detroit for damages resulting from assault and battery, false arrest and imprisonment, and malicious prosecution. Horatio Alva brought a separate action arising out of the same incident, which action was consolidated with plaintiffs' by stipulation. Following a settlement conference, plaintiffs agreed to settle their claims, subject to approval of the agreements by the Detroit Common Council, but Horatio Alva declined to do so and prevailed in a trial on his claim. Prior to the conclusion of Horatio Alva's trial, John Mastaw revoked his settlement and moved to have his case rescheduled for trial, which was denied. John Mastaw appealed to the Court of Appeals, which appeal was rejected. Subsequently, the Detroit Common Council approved the proposed settlement, but plaintiff Mastaw refused to execute a release and again moved to reschedule his claim for trial, which motion was denied, and an order entering judgment based on the settlement agreement was entered, Wayne Circuit Court, Richard D. Dunn, J. Mastaw appeals, alleging that he never entered into a binding agreement to settle. *Held:*

The trial court erred in denying plaintiff Mastaw's motion to schedule his cause for trial and in entering judgment in his favor pursuant to the proposed settlement agreement. Settlement of the claim was contingent on the Common Council's approval of the proposed agreement. The offer was not binding, not being supported by consideration, but was merely an open and continuing offer. Plaintiff Mastaw had the right to withdraw his offer any time prior to its acceptance. The offer was revoked prior to acceptance.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts § 1.
[2] 17 Am Jur 2d, Contracts § 2.
[3] 17 Am Jur 2d, Contracts § 88.
[4] 17 Am Jur 2d, Contracts §§ 31, 32, 36.

1. CONTRACTS — SETTLEMENT AGREEMENTS — ACTIONS.

   An agreement to compromise or settle a claim is a contract, governed by the legal principles applicable to contracts generally.

2. CONTRACTS — ILLUSORY PROMISES.

   The fundamental element of a promise is an expression of intention by a promisor that his future conduct shall be in accordance with his present expression, irrespective of what his will may be when the time for performance arrives, and an expression which does not bind the promisor's future conduct is an illusory promise.

3. CONTRACTS — OPTIONS — CONSIDERATION.

   An option contract, to be binding, requires consideration.

4. CONTRACTS — OFFERS OF SETTLEMENT — ACCEPTANCE.

   A plaintiff may revoke an open and continuing offer to settle a case prior to acceptance by a defendant.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *David K. Barnes, Jr.),* for plaintiff.

Before: D. E. HOLBROOK, JR., P.J., and BRONSON and D. F. WALSH, JJ.

BRONSON, J. Plaintiff appeals as of right from an order denying his motion to direct the assignment clerk to schedule this cause for trial and entering judgment in his favor in the amount of $9,000.

On March 5, 1974, plaintiff and Osvaldo Alva filed a complaint in the Wayne County Circuit Court seeking damages for assault and battery, false arrest and imprisonment, and malicious prosecution. Horatio Alva also filed suit arising out of the same incident in a separate complaint.[1] These

---

[1] The incident out of which these suits arose occurred on March 18, 1972. According to a police report, officers saw Osvaldo Alva leave the Senate Coney Island in Detroit without paying his bill. Upon confrontation, Alva was allegedly obstreperous, refused to pay his bill, and was arrested, resulting in a melee involving plaintiff and Horatio Alva. Undoubtedly, plaintiffs tell a different tale.

cases were consolidated by stipulation, and a trial date was ultimately assigned.

On May 5, 1978, a short settlement conference took place. At this time, plaintiff and Osvaldo Alva agreed to settle their claims for $9,000 and $35,000, respectively. Horatio Alva was offered $14,000 if he agreed to settle, but he declined to do so. The settlement agreements with plaintiff and Osvaldo Alva were explicitly stated as being contingent on the approval of the Detroit Common Council. Thereafter, Horatio Alva proceeded to trial and won a jury verdict in the sum of $100,-000.

Midway through Horatio Alva's trial, plaintiff learned of further documentation, corroborating his version of the events in question, which had been provided by the police to Horatio Alva.[2] Plaintiff then attempted to have his case rescheduled for trial. The assignment clerk refused, stating he could only do so upon order of the court.

Consequently, plaintiff moved for an order directing the assignment clerk to reschedule his case for trial. He claimed that the new information given to Horatio Alva convinced him not to settle. Plaintiff's decision to revoke the settlement was conveyed to defense counsel prior to the conclusion of Horatio Alva's trial. On July 7, 1978, the motion came to a hearing before the trial judge who presided in the Horatio Alva case. At this time, no order or dismissal had been entered in plaintiff's case, no releases had been executed, and the proposed settlement had not been approved by the

---

[2] Plaintiff asserts that the interrogatories he put to defendants resulted in responses which did not corroborate his story. He further asserts that he consequently agreed to settle his case because his attorney advised him that without corroboration a jury might not believe him. As will become apparent, however, the good faith of the police in failing to divulge the corroborating evidence to plaintiff prior to his agreement to settle is unimportant to this appeal.

Detroit Common Council. The trial judge stated that the motion had to be heard by Wayne County Circuit Court Presiding Judge Richard D. Dunn. The motion was renoticed for hearing before Judge Dunn. On August 8, 1978, Judge Dunn denied plaintiff's motion.

On August 23, 1978, plaintiff filed a claim of appeal to this Court. For reasons not entirely clear on the record, this appeal was rejected. Plaintiff contends in his brief, however, that the claim "was rejected by the staff of the Court of Appeals, who apparently determined that the Order of August 8, 1978, was not a final one, appealable as of right".

Also occurring on August 23, 1978, was the Detroit Common Council's approval of the proposed settlement. Following this approval, defense counsel notified plaintiff's attorney and tendered releases to be signed by plaintiff. Plaintiff refused to sign the releases or agree to dismiss the cause.

On October 9, 1978, plaintiff filed another motion to direct the assignment clerk to reschedule this matter for trial. On April 27, 1979, the motion was denied a second time. An order was entered on May 9, 1979, entering judgment based upon the alleged settlement.

Plaintiff contends on appeal that there was never a binding agreement to settle. Rather, since settlement of the claim was contingent on the Detroit Common Council's approval of the agreement, plaintiff asserts that he had the right to withdraw his offer to settle any time prior to the Council's approval. We agree.

An agreement to compromise or settle a claim is a contract, governed by the legal principles applicable to contracts generally. *Smith, Hinchman & Grylls Associates, Inc v Wayne County Board of*

*Road Comm'rs,* 59 Mich App 117, 123; 229 NW2d 338 (1975), *lv den* 394 Mich 823 (1975).

While we find no Michigan cases dealing with the problem of the adequacy of consideration in the context of an offer to settle a pending lawsuit, it is nonetheless apparent that we are confronted with a classic example of an illusory promise. Illusory promise has been defined by Corbin, Contracts, § 16, p 24, thus:

"There are certain forms of expression that have been described as 'illusory promises.' As this term itself implies, an illusory promise is not a promise at all as that term has been herein defined. If the expression appears to have the form of a promise, this appearance is an illusion. Suppose, for example, that X guarantees payment of P's note in return for C's written promise to forbear from suing P as long as C wishes to forbear. In this case C's words may create the illusion of a promise, but, in fact, he has made no promise. The fundamental element of promise seems to be an expression of intention by the promisor that his future conduct shall be in accordance with his present expression, irrespective of what his will may be when the time for performance arrives. In the supposed case, the words used by C are not such as may reasonably be relied upon by P. The clear meaning of C's expression is that his future conduct is to be in accordance with his own future will, just as it would have been, had he said nothing at all." (Footnote omitted.)

Since the Detroit Common Council had unfettered discretion to accept or reject the settlement, its options were in no way limited by the supposed settlement. Defendants gave plaintiff nothing of value nor experienced any detriment at the time the "settlement" was entered into as only the Detroit Common Council could make a binding compromise of claims against the city. See, *Twp of Royal Oak v Pleasant Ridge,* 307 Mich 714; 12

NW2d 393 (1943), *Mikelsavage v Detroit,* 343 Mich 566; 73 NW2d 266 (1955), McQuillan, Municipal Corporations (3d ed), § 48.18, pp 124-125.

On the illusory nature of the promise, this case is analogous to *Modern Globe, Inc v 1425 Lake Drive Corp,* 340 Mich 663; 66 NW2d 92 (1954). There, the plaintiff-seller and defendant-buyer entered into an agreement in respect to certain realty. The buyer conditioned the agreement on the approval of its stockholders. In actuality, the buyer was a wholly-owned subsidiary with a single stockholder, the parent corporation. The parent corporation rejected the offer. The Supreme Court held that since the contract was specifically conditioned on the approval of the parent corporation no binding contract arose, and plaintiff could not recover. The same principle holds true, here. If plaintiff were deemed bound by the "settlement" here, the Detroit Common Council could have intentionally stalled action on the agreement and then decided to reject or accept the settlement depending on whether Horatio Alva prevailed in his suit.

During the motion hearing on April 27, 1979, the trial court referred to plaintiff's agreement to settle as a "binding offer". We disagree. The parties could have entered a binding option contract, if supported by consideration, requiring plaintiff to leave his offer to settle for $9,000 open for a stipulated period of time. This, however, was not done.

The so-called agreement to settle in this case was merely an open and continuing offer. Plaintiff had the right to revoke the offer prior to its acceptance. Had the Detroit Common Council approved the settlement prior to revocation of the

offer, a binding contract would have been formed. *Hart Potato Growers Ass'n v Greiner,* 236 Mich 638, 641-642; 211 NW 45 (1926). However, in this case revocation of the offer to settle preceded the acceptance by the Detroit Common Council which would have transformed the option into a binding contract.

Reversed and remanded for trial.