891 P.2d 556

**BOARD OF EDUCATION, GADSDEN INDEPENDENT SCHOOL DIST. NO. 16, and Gadsden Independent School Dist. No. 16, Petitioner–Appellant,**

v.

**JAMES HAMILTON CONSTRUCTION CO., Respondent–Appellee.**

No. 15267.

Court of Appeals of New Mexico.

Dec. 20, 1994.

Beverly J. Singleman, Hubert & Hernandez, P.A., Las Cruces, for petitioner-appellant.

Jeffrey A. Dahl, Clayton E. Crowley, Lamb, Metzgar, Lines & Dahl, P.A., Albuquerque, for respondent-appellee.

*OPINION*

BLACK, Judge.

In September 1991, James Hamilton Construction Company (Buyer) hired an experienced land developer to determine the feasibility of constructing a residential housing subdivision in Santa Teresa, New Mexico. On December 20, 1991, Buyer signed a document captioned "Agreement For Sale and Purchase of Land" (the Agreement) with the owners of a twenty-eight-acre parcel in Santa Teresa (the Property), Charles and Phyllis Crowder and William Ikard (Sellers).

On May 26, 1992, Gadsden Independent School District No. 16 (the School District) filed a condemnation action on thirteen of the twenty-eight acres subject to the Agreement. In January 1993, the district court entered a stipulated partial judgment awarding Sellers $130,000 as just compensation for the condemned thirteen acres. After a bench trial, the district court held that the Agreement was a binding executory contract, that Buyer had an interest in the land at the time of the taking, and that Buyer was entitled to $180,350 as compensation for its development costs prior to the taking. We reverse.

## I. FACTS

The focus of the case is on the Agreement executed by Buyer and Sellers. Under the Agreement, Buyer covenants that it will "comply with all of the laws, rules and regulations of Dona Ana County, New Mexico, pertaining to the subdivision and development of land ... and further to meet the standards and specifications for the installation of water and sewer services of the Santa Teresa Services Company." In addition, Buyer "agrees to provide public street access through the Property to the Sellers' adjoining property." The only other covenant advanced by Buyer is as follows:

Sellers agree to sell and Buyer agrees to purchase the Property for Ten Thousand and No/100 Dollars ($10,000.00) per acre, for a total price of Two Hundred Eighty Thousand and No/100 Dollars ($280,000.00), for the 28–acre parcel subject to the satisfaction of the terms and conditions as are hereinabove and hereinafter set forth. In the event the certified survey to be made by the Sellers increases or decreases the number of acres in the Property, the total purchase price will then be determined by multiplying the actual acreage or fraction thereof by $10,000.00.

The Agreement also gives Buyer forty days from the date of execution, December 20, 1991, "to complete its due diligence effort and verify to its satisfaction all matters pertaining to the Property and to review and approve or reject all matters pertaining to this transaction." Significantly, the Agreement also made provisions for the establishment of an escrow. The escrow paragraph provided that Buyer and Sellers will "consummate this transaction or Buyer may elect to withdraw from this Agreement as provided for in the Letter of Escrow Instructions hereinabove referred to."

The Letter of Escrow Instructions (Instructions), which is incorporated in the Agreement, is also dated December 20, 1991, and indicates that Sellers are depositing three special warranty deeds naming Buyer as grantee. The Instructions also provide that Buyer is to deposit escrow funds as follows:

A. On or before forty (40) days of the date hereof, Buyer may deposit with you, as Escrow Agent, the sum of Twenty-eight Thousand and No/100 Dollars ($28,000.00).

B. On or before forty (40) days of the date hereof, Buyer may also deposit with you a Declaration of Covenants and Restrictions, together with a letter executed by Sellers approving this Declaration of Covenants and Restrictions.

C. On or before six (6) months of the date hereof[,] Buyer may deposit with you, as Escrow Agent, an additional Sixty-six Thousand and No/100 Dollars ($66,000.00).

D. On or before nine (9) months of the date hereof [,] Buyer will deposit with you, as Escrow Agent, an additional Ninety-three Thousand and No/100 Dollars ($93,000.00).

E. On or before nineteen (19) months of the date hereof[,] Buyer will deposit with you, as Escrow Agent, an additional Ninety-three Thousand and No/100 Dollars ($93,000.00). This amount may be increased or decreased to reflect the purchase price of $10,000 per acre or fraction thereof for the actual acreage reflected in the final accepted survey of the Property.

The Instructions then direct the escrow agent to do the following:

In the event, within forty (40) days of the date hereof, Buyer has accepted the terms and conditions of the Agreement identified herein as Item No. 2, and has deposited $28,000.00 with you, as Escrow Agent, you are to maintain this escrow. In the event Buyer fails to deposit the funds or notifies

**418**

you that it does not intend to close this transaction, you are to return the documents deposited with you to the parties causing them to be deposited with you and cancel this escrow.

There is no dispute that Buyer did not deposit any funds in escrow within the forty days referenced in the Agreement and Instructions. Indeed it is undisputed that at the time of trial in August 1993, more than eighteen months after the execution of the Agreement and attached Instructions, Buyer had never tendered any money for the Property.

The district court found that Buyer completed its due diligence studies and decided to develop the Property as a residential subdivision. To that end, Hamilton searched the title, performed soil testing, did a traffic impact analysis, and worked with an engineer to determine what governmental approvals would be necessary. The Agreement also required the Crowders, as owners of the Santa Teresa Services Company, to issue a commitment to supply water and sewer to the Property. However, Santa Teresa Services was unable to provide water and sewer due to the refusal of the New Mexico Environmental Improvement Division to issue a permit for liquid waste discharge for the subdivision. The testimony was that Charles Crowder therefore suggested that Buyer not deposit any money into escrow until the sewage issue was "cleared up."

Despite the failure to make any payments into escrow, Buyer proceeded to file its application for subdivision approval with Dona Ana County in April 1992. Buyer, however, stopped all work on the subdivision upon being served with the petition for condemnation in June 1992. Buyer then had the Property replatted, minus the thirteen acres condemned by the School District, and decided that the development costs per lot on the remaining land would be too high for the type of subdivision Buyer had envisioned. The district court found that "[i]f property at the development stage of Hamilton's project were to be marketed, land, hard costs, and soft costs (development costs) and a profit would be recoverable." The district court further found that, at the time the condemnation was filed, Buyer had "direct project costs expended (excluding the land) of approximately One Hundred Sixty–Two Thousand, Four Hundred Sixteen Dollars ($162,416.00)." After adding interest, the district court entered a judgment in favor of Buyer in the amount of $180,350.00.

## II. *STANDARD OF REVIEW*

■ The parties argue over what interest Buyer had in the Property, if any, under the terms of the Agreement and Instructions at the time of the condemnation taking. "[W]hen the issue to be determined rests upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to determine the facts and draw its own conclusions...." *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 103, 678 P.2d 1170, 1178 (1984). Therefore, "an appellate court is not bound by a trial court's [legal] interpretation of a written document, where the interpretation rests solely upon the wording of the document." *Ortiz v. Lane*, 92 N.M. 513, 518, 590 P.2d 1168, 1173 (Ct.App.1979) (Hernandez, J., specially concurring); *see also Schueller v. Schueller*, 117 N.M. 197, 199, 870 P.2d 159, 161 (Ct.App.1994) (stating that district court interpretation is not binding on appellate court).

## III. *WHEN THE AGREEMENT IS READ TOGETHER WITH THE ESCROW INSTRUCTIONS, HAMILTON MAKES NO BINDING PROMISES AND PROVIDES NO CONSIDERATION.*

■ The School District argues that the Agreement was not a binding contract because Buyer failed to make any payment into escrow. Under the terms of the Agreement as it incorporates the Instructions, we agree.

■ The Agreement refers to "the Letter of Escrow Instructions, a copy of which is attached hereto and made a part hereof." In addition to the fact that the Agreement expressly incorporates the Instructions, when two such documents refer to each other, they are properly construed together. *Master Builders, Inc. v. Cabbell*, 95 N.M. 371, 373–

74, 622 P.2d 276, 278–79 (Ct.App.1980), *cert. denied,* 95 N.M. 426, 622 P.2d 1046 (1981). When these two documents are read together, it is clear that Buyer did not provide any consideration under the Agreement and was not legally obligated to perform under its terms. The Agreement thus provided Buyer no legal interest in the Property at the time of the taking.

■ Buyer argues that the Agreement is an executory contract. The School District maintains that the Agreement, when read with the incorporated Instructions, is no more than an option. "Executory contracts are those contracts on which performance remains due to some extent on both sides." *In re Priestley,* 93 B.R. 253, 258 (Bankr. D.N.M.1988). An option to purchase is a contract where the property owner gives another the privilege of buying property within a specific time on terms and conditions expressed in the option. *Hueschen v. Stalie,* 98 N.M. 696, 698, 652 P.2d 246, 248 (1982). However, both an executory and an option contract must rest on consideration. *Compare* 1 Richard A. Lord, *Williston on Contracts* § 5:16, at 722 (4th ed. 1992) (noting consideration requirement for option contract) *with* 3 *id.* § 7:1, at 7 (discussing contract consideration requirement at common law).

■ It is elemental "that the essence of a valid agreement is consideration." *Sierra Blanca Sales Co. v. Newco Indus., Inc.,* 88 N.M. 472, 474, 542 P.2d 52, 54 (Ct.App.1975), *rev'd on other grounds sub nom. Fortuna Corp. v. Sierra Blanca Sales Co.,* 89 N.M. 187, 548 P.2d 865 (1976); *cf. Knoebel v. Chief Pontiac, Inc.,* 61 N.M. 53, 57, 294 P.2d 625, 628 (1956) (holding that conditional sales contract without consideration is unenforceable). A promise of one party may be consideration for the promise of the other party, but "[e]ach promise is in need of consideration to be binding and enforceable." *Acme Cigarette Servs., Inc. v. Gallegos,* 91 N.M. 577, 581, 577 P.2d 885, 889 (Ct.App.1978). Consideration adequate to support a promise is, therefore, essential to the enforcement of a contract. *Romero v. Earl,* 111 N.M. 789, 791, 810 P.2d 808, 810 (1991). In order to be binding as sufficient consideration, a promise must be "lawful, definite and possible." *Sanders v. Freeland,* 64 N.M. 149, 152, 325 P.2d 923, 925 (1958). Under the terms of the Agreement and Instructions, Buyer gave no financial consideration and made no "definite" promise. *See generally Friedman v. Tappan Dev. Corp.,* 22 N.J. 523, 126 A.2d 646, 650–51 (1956) (discussing requirement that contract promise be definite).

■ The Agreement says that "Sellers wish to sell and Buyer wishes to purchase the Property." A gratuitous statement of intention, even when concurred in by the receiving party, is not sufficient to create a legal contract. *Beverage Distribs., Inc. v. Olympia Brewing Co.,* 440 F.2d 21, 29 (9th Cir.), *cert. denied,* 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971). Thereafter, Buyer warrants that it will "comply with all of the laws, rules and regulations of Dona Ana County." A promise to do what a party is already obligated to do by law is not sufficient consideration. *Hurley v. Hurley,* 94 N.M. 641, 645, 615 P.2d 256, 260 (1980), *overruled on other grounds by Ellsworth v. Ellsworth,* 97 N.M. 133, 135, 637 P.2d 564, 566 (1981). The only other promise by Buyer contained in the Agreement is for Buyer "to provide public street access through the Property to the Sellers' adjoining property." This would be consideration only if Buyer had promised to make payment and assume possession of the Property so that Sellers' property would become "adjoining."

The Instructions also create no definite obligation. On the critical issue of payment, the Instructions state:

A. On or before forty (40) days of the date hereof, Buyer *may* deposit with you, as Escrow Agent, the sum of Twenty-eight Thousand and No/100 Dollars ($28,000).

(Emphasis added). These terms leave it entirely to the discretion of Buyer whether to deposit any payment for the Property, and that was clearly understood by both parties as the consideration. Indeed, as counsel for Buyer argues, "the Purchase Agreement could not have been an option because the *quid pro quo* is land in exchange for money, not the sale of a continuing offer in exchange for money." At the time of the taking Buyer

had not paid any money and did not possess any land. More importantly, it had no obligation to do so.

The testimony of the parties at trial also supports the conclusion that Buyer had no duty to make any payments and could walk away from the Agreement without legal consequence. On cross-examination, Buyer's president, Charles Hamilton, admitted that his understanding under the Agreement and Instructions was that "we were not obligated to deposit the money." On cross-examination he testified:

Q. And has James Hamilton Construction Company complied with any of the requirements in the escrow instructions that are in Paragraph 3?

A. We have not made any deposits up to this time.

Q. And there's nothing under this agreement that required you to do so?

A. Not really, no.

Charles Crowder also testified on cross-examination that his understanding of the Agreement and Instructions was that Buyer had no duty to perform:

Q. And had they—if they never exercised the option and they never put the money down on the agreement for reasons of due-diligence, or if they just never put the money down, you didn't have any particular remedy against them at that point, did you?

A. No, nor I didn't seek any.

Q. Well, I mean, legally you couldn't have held them to the agreement at that point, could you?

A. They did not have the duty.

Thus, the parties' understanding and intent are consistent with what we view as the plain meaning of the language; Buyer was not obligated by the Agreement or Instructions to do anything.

 A valid contract must possess mutuality of obligation. *Williams v. Waller,* 51 N.M. 180, 184, 181 P.2d 798, 800 (1947). Mutuality means both sides must provide consideration. *See Vanzandt v. Heilman,* 54 N.M. 97, 107, 214 P.2d 864, 870 (1950); *see also* 3 Lord, *supra,* § 7:14, at 287–90 (discussing consideration requirement). "It is

also elementary that a contract, which leaves it entirely optional with one of the parties to perform, is not founded on mutual promises." *Acme,* 91 N.M. at 581, 577 P.2d at 889; *see also Berry v. Walton,* 366 S.W.2d 173, 173–74 (Ky.Ct.App.1963) (stating that contract placing no obligation on mineral lessee except payment of royalties on minerals actually removed lacked mutuality). A purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror is illusory, and an illusory promise is not sufficient consideration to support a contract. *See Interchange Assocs. v. Interchange, Inc.,* 16 Wash.App. 359, 557 P.2d 357, 358 (1976); *see generally* 3 Lord, *supra,* § 7:7, at 88–89 (stating that illusory promise cannot serve as consideration). As we have indicated, because Buyer's promise to perform under the Agreement and Instructions was entirely at its discretion, any consideration contained in such a promise would be illusory. *See Andreoli v. Brown,* 35 Ohio App.2d 53, 299 N.E.2d 905, 906 (1972); *cf. Commercial Movie Rental, Inc. v. Larry Eagle, Inc.,* 738 F.Supp. 227, 230–31 (W.D.Mich.1989) (finding promise to be illusory where offeror could never be held liable for failure to perform).

Nor could any of Buyer's actions prior to the taking be interpreted as providing consideration. Buyer's only actions were toward evaluation of the Property and preparation for obtaining the necessary subdivision approvals so that these development barriers could be hurdled if, and when, Buyer chose to bind itself under the Agreement. Time and money spent by an optionee to increase the value of his option cannot be construed as consideration for the agreement itself. *See Berryman v. Kmoch,* 221 Kan. 304, 559 P.2d 790, 795 (1977). Moreover, by their own admission, the parties had not complied with the terms of the Agreement as of August 1993. As Mr. Hamilton testified:

Q. Now, have you—when I say, "you"—has James Hamilton Construction Company made any payments for the purchase of the land in question at this point in time?

A. No, we have not.

Q. And why is that, Mr. Hamilton?

A. As the—as we did our work on the property and did our preparation to apply to the County for a subdivision, it became apparent that the sewer people there at Santa Teresa Sanitation Services had a problem with the Environmental Department, and they couldn't—and the County was not willing to accept our subdivision until that problem was resolved with the sewer people; and in our—*we felt that as long as we withheld our payment of these funds, that that would keep Mr. Crowder more willing to be sure that that sewer problem was resolved, and then knowing that as soon as it was resolved, we were willing to go ahead to complete our contract.*

(Emphasis added).

## IV. *BUYER WAS IN DEFAULT UNDER THE AGREEMENT.*

Whether the "contract" is classified as an executory agreement or an option, the parties had failed to comply with its terms at the time of the condemnation taking. Paragraph six of the Agreement provided:

6. Buyer shall have forty (40) days from the date hereof to complete its due diligence effort and verify to its satisfaction all matters pertaining to the Property and to review and approve or reject all matters pertaining to this transaction including, but not limited to, the survey and the binder for the policy of title insurance.

This dovetailed into the Instructions which require:

In the event, within forty (40) days of the date hereof, Buyer has accepted the terms and conditions of the Agreement identified herein as Item No. 2, and has deposited $28,000.00 with you, as Escrow Agent, you are to maintain this escrow. *In the event Buyer fails to deposit the funds* or notifies you that it does not intend to close this transaction, *you are to return the documents deposited with you* to the parties causing them to be deposited with you *and cancel this escrow.*

(Emphasis added).

There is no dispute over the fact that Buyer failed to deposit the $28,000. Nonetheless, the escrow agent did not return the documents or cancel the escrow. By its terms, the Agreement required performance within a specified time. That time expired without the specified performance. Rather, the parties testified that they orally agreed Buyer did not have to perform until the Crowders' Santa Teresa Services Company resolved its problems with the Environmental Improvement Division. This oral agreement gave Buyer an indefinite extension. By the date of trial in August 1993, however, Buyer still had not tendered any money into escrow and therefore had acquired no interest in the land.

 As the School District correctly points out, the modification which would allow Buyer an indefinite extension was not in writing and was therefore not valid. The Agreement and Instructions were obviously intended to convey real estate. *See Hobbs Mun. Sch. Dist. No. 16 v. Knowles Dev. Co.,* 94 N.M. 3, 5, 606 P.2d 541, 543 (1980) (stating that interest acquired under an executory contract for sale of land is real estate). The statute of frauds requires that any conveyance of real property be in writing. *Mercury Gas & Oil Corp. v. Rincon Oil & Gas Corp.,* 79 N.M. 537, 539, 445 P.2d 958, 960 (1968); *see Ritter–Walker Co. v. Bell,* 46 N.M. 125, 128, 123 P.2d 381, 382 (1942). The alleged oral extension does not meet this requirement. "An expired contract within the statute [of frauds] cannot be revived and extended by parol agreement, nor can a contract in writing be modified or varied by a subsequent oral agreement." *Gonzales v. United Southwest Nat'l Bank,* 93 N.M. 522, 524, 602 P.2d 619, 621 (1979) (citations omitted); *see also Dave Zerwas Co. v. James Hamilton Constr. Co.,* 117 N.M. 724, 725, 876 P.2d 653, 655 (1994) (stating that modification to agreement within the statute of frauds must itself be in writing). Buyer cannot, therefore, rely on the oral agreement as the basis for its claim to a legal interest in the Property.

 Moreover, the Agreement itself provided that "no addition to or modification of any term or provision shall be effective unless set forth in writing and signed by both Sellers and Buyer." Where the contract requires that any modification be in writing,

**422**

oral modifications are ineffectual. *United States ex rel. McDonald v. Barney Wilkerson Constr. Co.*, 321 F.Supp. 1294, 1295 (D.N.M.1971); *see also Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 645, 777 P.2d 371, 373 (1989) (oral modifications could not create enforceable contractual obligations in light of contract provision that modifications must be in writing).

 Even if the December 1991 Agreement and Instructions did create a valid contract, Buyer was still in default as of the time of the taking and had forfeited whatever right to an interest in the Property it could have acquired. Because Buyer did not comply with the Agreement and Instructions, any property interest that these documents created in Buyer was lost prior to the time of the taking and Buyer's right to obtain any interest in the Property could not be extended by oral agreement.

 When private land is condemned, only the person who owns or occupies the land at the date of the taking or has some legal interest in the property has a claim for damages. *See* NMSA 1978, § 42–2–5(B) (Orig. Pamp.); *see also Mesich v. Board of County Comm'rs*, 46 N.M. 412, 416, 129 P.2d 974, 976 (1942) (discussing such person's right to damages where private land is taken for public use). The "date of taking" for compensation purposes is generally the date the order of permanent entry is filed and the condemnee is entitled to actual possession of the condemned property. *See State ex rel. State Highway Dep't v. Yurcic*, 85 N.M. 220, 222, 511 P.2d 546, 548 (1973); *see also County of Dona Ana v. Bennett*, 116 N.M. 778, 782–83, 867 P.2d 1160, 1164–65 (1994) (recognizing that taking may also occur in Special Alternative Condemnation Procedure when preliminary order has been entered and acted upon). The documents in this case indicate that this event occurred on January 7, 1993. The only owners of record on that date were Sellers. On January 15, 1993, the district court entered a Stipulated Partial Judgment, which awarded Sellers $130,000.00 for the thirteen acres condemned. (The $10,-000 per acre contained in the Stipulated Partial Judgment is the per acre purchase price contained in the Agreement and Instruc-

tions.) However, Buyer had not purchased so much as an acre, so it did not participate in the award under the stipulated judgment.

## V. CONCLUSION

 Only those with a legal interest in condemned property are entitled to compensation when that property is taken under eminent domain. The mere execution of the Agreement and Instructions gave Buyer no legal interest in the Property. While Buyer could have obtained a legal interest in the thirteen acres condemned by the School District, it had not done so at the time of the taking. Buyer is therefore not entitled to compensation, and the judgment of the district court is reversed.

IT IS SO ORDERED.

APODACA, C.J., and FLORES, J., concur.