**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

ANTHONY HEUSER AND NONA
HEUSER,

     Plaintiffs-Appellants,

v.

FRANK KEPHART; FARMINGTON
UTILITY SYSTEM; JACK
MCQUITTY, Code Compliance
Officer; STEPHEN HRZICH, City
Electrical Inspector, City of
Farmington; JAMES CHEVERIE,
ROGER LASATER, SAN JUAN
COUNTY BOARD OF COUNTY
COMMISSIONERS,

    Defendants-Appellees.

No. 98-2233

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No CIV-95-257-MV/LCS)

---

Debra D. Poulin, Santa Fe, New Mexico, (Richard Rosenstock, Santa Fe, New
Mexico and Jeffrey J. Buckels, Albuquerque, New Mexico on the briefs) for the
plaintiffs-appellants.

David G. Reynolds (Wayne E. Bingham with him on the brief), Crider, Bingham &
Hurst, P.C., Albuquerque, New Mexico, for the defendants-appellees Hrzich,
McQuitty and City of Farmington Utility System.

Robert C. Armijo (Gregory W. MacKenzie with him on the brief), Civerolo,
Gralow & Hill, Albuquerque, New Mexico, for defendants-appellees Kephart,

Cheverie, Lasater and San Juan County Board of County Commissioners.

_____

Before **EBEL**, **HOLLOWAY** and **KELLY,** Circuit Judges.

_____

**HOLLOWAY**, Circuit Judge.

_____

Plaintiffs/appellants Anthony and Nona Heuser (plaintiffs) bring this timely appeal from a judgment of the district court dismissing, pursuant to a putative settlement agreement, a suit they brought under 42 U.S.C. § 1983. The Section 1983 action alleged constitutional violations by state, county and city officials in denying electrical services to plaintiffs, *inter alia*. Contending that no enforceable settlement agreement had been reached, the plaintiffs opposed the dismissal below and now ask this court to reverse the judgment of dismissal.

**I**

**A**

Because the issues in this appeal are limited to those involving the enforceability of the putative settlement agreement of April 15, 1998, the "Outline of Agreement," we need only provide a brief general sketch of the underlying dispute. Except for findings of the district court noted below, we summarize only the plaintiffs' allegations.

Plaintiffs apparently live near to but not within the city limits of Farmington,

New Mexico and before the present controversy, received their electrical service from the Farmington Utility System. Defendant Kephart, a building inspector for the county, allegedly entered plaintiffs' property without a warrant in 1991. As a result of what he saw then, he brought a criminal charge of constructing a building without a permit. Eventually plaintiffs were acquitted of that charge. While that criminal case was pending, however, a search warrant was obtained for some of the outbuildings on plaintiffs' property, and the warrant was executed on March 11, 1992. The actions of some of the defendants in obtaining and executing this search warrant are central events alleged by plaintiffs in the instant case.

The district judge found that the following facts were undisputed.[1] Kephart was not properly certified as a building inspector. None of the officers who assisted Kephart in presentation of the search warrant application demonstrated their credentials to conduct an administrative inspection. The allegations in the search warrant application were limited to violations of county ordinances regarding proper set back and/or fire separations, failure to obtain building permits, and the existence

---

[1]These findings occurred in a rather unusual procedure. Some or all of the defendants had filed a motion for summary judgment raising the defense of qualified immunity. When that motion was denied, the defendants commenced an interlocutory appeal. Plaintiffs then moved the district court to certify that the appeal was frivolous, arguing that the appellate court did not have jurisdiction of the appeal under the doctrine of *Johnson v. Jones*, 515 U.S. 304 (1995). The district court granted the plaintiffs' motion, thus determining that proceedings could continue in the district court during the pendency of the interlocutory appeal. *See Stewart v. Donges*, 915 F.2d 572, 574-79 (10th Cir. 1990).

-3-

of five or more structures "that appear to be fire hazards to adjacent buildings and property lines." Aplt. App. 63, 65-66.

The district judge further found that no allegations of electrical or plumbing code violations were made in the affidavit and Kephart was neither qualified nor authorized to conduct electrical or plumbing inspections. Kephart asked defendant Hrzich to investigate the electrical wiring of the plaintiffs' buildings in spite of the lack of allegations of violations of electrical codes in the search warrant affidavit. No allegations of criminal activity were made in the search warrant affidavit. The district judge found that in the affidavit defendant Deputy Sheriff Cheverie "falsely accused Plaintiffs of committing crimes in violation of a county ordinance and misinformed the magistrate who issued the criminal search warrant that Plaintiffs' refusal to allow Kephart right of entry on their property without a warrant in itself violated the building code." The search warrant authorized a search only by Kephart, but other inspectors or law enforcement officers (ten of them according to plaintiffs' allegations) joined him in executing the warrant. While executing the warrant, two of the defendants entered the plaintiffs' residence, which was expressly excluded from the search warrant. *Id.*

About two months after execution of the search warrant, plaintiffs filed a tort claim with the county. On June 10, 1992, within a week of plaintiffs' filing of the claim, two of the defendants cut off plaintiffs' electrical service. Service was

-4-

restored on April 2, 1993, but on May 26, 1993, it was again terminated by some of the defendants. Service was then not restored for about five years, under circumstances discussed below. Altogether, the plaintiffs were without electric service from the City for almost six years, relying on electricity from their own generator during that time.

**B**

About three years after the March 1992 execution of the search warrant, plaintiffs commenced the present Section 1983 action. Plaintiffs, who originally were proceeding *pro se*, sued the Governor and the Attorney General of New Mexico; the City Council of Farmington and the Farmington Utility System (the City); the Board of Commissioners of the County of San Juan (the County); and various county and city officials. Plaintiffs invoked 42 U.S.C. § 1983, *inter alia*, alleging that the defendants had violated plaintiffs' constitutional rights. The district court thus had jurisdiction under 28 U.S.C. §§ 1331 and 1343. The state officials were dismissed during the progress of the case and are not parties to this appeal.

**C**

On April 15, 1998, about three years after the action had been commenced, a settlement conference was conducted with a court-appointed mediator. At the conference there was agreement on the basic contours of a settlement, which the mediator summarized in a hand written document styled "Outline of Agreement" and

which was signed by plaintiffs, their attorney, and attorneys for the City, Defendants

and for San Juan County. Aplt. App. 106-109. (The attorney for the City also was

representing the city employees and officials; similarly the attorneys for the County

were also representing the county employees and officials.)

We quote the most pertinent provisions of the Outline: [2]

> 1. Counsel for the County and City Defendants agree that they will recommend to their respective clients that said clients jointly pay the total sum of $237,500 in full and complete settlement of all claims in this above-referenced action filed or that could have been filed including attorneys fees and costs.
> 2. Plaintiffs agree that if said sum of $237,500 is jointly offered as indicated above by the County & City Defendants that they will accept said offer, if it also includes the terms set out below.
> 3. Farmington Utility System agrees that if a full and complete settlement is reached, they will promptly restore electrical service to the Heuser's [sic] property . . . and the Heusers will be reinstated as regular customers without need of an inspection, subject to the Heusers[] signing a Hold Harmless Agreement.
> 4. The Heusers agree to sign a full and complete standard release in a form satisfactory to Defendants which Release shall contain language that Defendants do not admit liability.

Aplt. App. 107-108.

As made clear in an affidavit of counsel later submitted to the district court, the

attorney representing the City at the mediation session did not have authority to

---

[2]We have a typed "transcript" of the Outline provided by plaintiffs and appended to their brief. Defendants have not contested the accuracy of plaintiffs' typed version of the original hand-written document.

-6-

commit the City to any settlement, which required the approval of the City Council.[3]

Before that body could meet and approve the proposal, plaintiffs communicated their

dissatisfaction with it and indicated that they would not accept the payment called for

therein. Upon receiving notice that the settlement was being rejected by the

plaintiffs, the district judge *sua sponte* scheduled a hearing to determine whether

plaintiffs' electricity could be safely restored immediately. Aplt. App. 70-71. Before

the day of the scheduled hearing, the service was restored.

The defendants moved for enforcement of the purported settlement agreement,

which the district court granted over plaintiffs' objection. The court entered judgment

based on that order, dismissing plaintiffs' action as settled. Plaintiffs then filed a

motion under Fed. R. Civ. P. 59(e) asking the court to vacate the order enforcing the

settlement. The judge denied that motion, again holding that the Outline constituted

an enforceable agreement, and plaintiffs commenced this appeal.

## II

In the first of the two orders upholding the settlement agreement, the district

judge ruled that the language of the Outline was unambiguous so that there was no

---

[3] The New Mexico Supreme Court has noted that it "'is fundamental that an attorney does not by reason of his employment have authority to compromise his client's cause of action absent an emergency requiring prompt action.'" *See Augustus v. John Williams & Assoc., Inc.*, 589 P.2d 1028, 1030 (N.M. 1979) (quoting *Hayes v. Eagle-Picher Industries, Inc*., 513 F.2d 892, 893 (10th Cir. 1975)).

need for extrinsic evidence as to the meaning of its terms. The judge found no merit in plaintiffs' contention that the terms of the Outline were not sufficiently definite for creation of a binding contract, and she found that the parties intended to form a final enforceable agreement, as opposed to merely documenting the progress of their negotiations. Her findings stated:

> Since the City Defendants are self insured, the City Council had to give final formal approval of the settlement amounts. Affidavit of Robin D. Strother. Accordingly, the parties agreed that "Counsel for the County and City Defendants will recommend to their respective clients that said clients jointly pay the total sum of $237,500 in full and complete settlement of all claims in the action filed or that could have been filed including attorneys fees and costs."

Aplt. App. at 76.

The condition of approval of the settlement amount by the City Council was a condition precedent to enforcement of the contract, the district court ruled, but not a condition to formation of the contract. Accordingly, the City had a reasonable time to perform the condition. The judge also rejected the plaintiffs' allegation that they had signed the Outline under duress. The judge opined that the real reason for the plaintiffs' resistance was the belated belief that they were not receiving enough money for their claims and that the court could not relieve the parties of their commitments.

On plaintiffs' motion to amend the judgment, which argued that there was no consideration for their promise to accept the deal if offered, the district judge

specifically held that the consideration was sufficient:

> There was a bilateral contract here: *in return for Defendants' agents' promise to recommend that the City pay the negotiated amount, Plaintiffs promised not to back out on the deal that Defendants' attorneys had negotiated* (at great expense to the Defendants) before Defendants could act on that recommendation. New Mexico follows Section 71 of the Restatement (Second) of Contracts (1979). Under that Section, "[t]o constitute consideration, a performance or a return promise must be bargained for." . . . . The Court finds that the parties bargained for the exchange of promises and that the cessation of litigation was the goal of the bargaining process. . . . . *Defendants, through their agents, provided adequate consideration for Plaintiffs' promise to accept the monetary settlement if it was offered.* Settlement negotiations between individuals and public entities would be meaningless if Courts allowed individuals to undo days of negotiation (with their underlying expense) by simply changing their minds before the entity can take formal action to complete the bargain.

Aplt. App. 92-93 (emphasis added).

## III

We review a district judge's approval of a settlement agreement for an abuse of discretion. *See United States v. Hardage*, 982 F.2d 1491, 1495 (10th Cir. 1993). We have held that the enforcement and interpretation of settlement agreements in Title VII cases are governed by federal common law because such settlements are "inextricably linked" to the underlying law of Title VII. *Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir. 1991) ("Federal common law governs the enforcement and interpretation of such agreements because 'the right of the litigants and the operative legal policies derive from a federal source.' *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981)."). Our later opinion in *Morris v. City of Hobart*, 39

-9-

F. 3d 1105, 1112 (10th Cir. 1994), addressed the issue whether federal or state law governs the interpretation of such settlement agreements in the context of subject matter jurisdiction and said that the "cause of action [for breach of contract arising out of private settlement of a Title VII claim] is a subject traditionally relegated to state law."[4] Here the district judge said that "'Construction of a settlement agreement generally is governed by state law.'" Memorandum Opinion and Order, Appellants' App. at 78 (quoting *Brockman v. Sweetwater County School Dist. No. 1*, 25 F.3d 1055, 1994 WL 170795 (10th Cir.), *cert. denied*, 513 U.S. 951 (1994)).

In the instant appeal, the parties do not present a controversy over which law governs. In fact the briefs for all the parties say that state law governs interpretation of the settlement contract. Appellants' Brief at 20 n. 6; Response Brief of Appellees Frank Kephart *et al.* at 21; Response Brief of Appellees McQuitty *et al.* at 18. Moreover we feel that the applicable principles of contract law are not different in federal and New Mexico law. Accordingly, we turn to the parties' arguments which we will consider under basic contract rules.

Plaintiffs first argue that the defendants' alleged promise was illusory and thus legally insufficient as consideration for plaintiffs' promises. Therefore, plaintiffs

---

[4]The divergence of views of other courts on the applicability of federal or state law is noted in 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 4541 at p. 394 n. 132 (2d ed. 1996) (collecting cases).

contend, the district court erred in holding that the Outline constituted a legally enforceable contract. We agree. It was apparent from paragraphs 1 and 3 of the Outline's numbered provisions that the $237,500 settlement had to be submitted to, and be given approval by, the City and County authorities. Aplt. App. at 108.

Thus, there was no legally sufficient consideration for the plaintiffs' promise to accept the contemplated settlement offer. The district judge found that the consideration, which she also found had been specifically bargained for, was the attorneys' promise to recommend the terms of the proposed settlement to their clients. The court's ruling notes that the attorneys were acting as agents. Section 147 of the Restatement (Second) of Agency provides: "Unless otherwise agreed, a disclosed or partially disclosed principal is a party to a contract, if not negotiable or sealed, made by his agent within his authority." *See also id.* § 292 & comment *a*. Here, the language of the Outline makes it clear that the parties "otherwise agreed" that the defendants as principals were not parties to the "agreement" but were to be given a recommendation to offer a specific amount of money, plus other consideration, to the plaintiffs if they chose to do so.

Under the terms of the Outline, the defendants were not obligated to extend the offer to plaintiffs, and the Outline noted the operative procedure "if said sum of $237,500 is jointly offered . . . by the County and City Defendants . . ." Outline of Agreement, paragraph 2, Aplt. App. at 107. The defendants were completely free to

-11-

choose between two alternatives – they could accept the attorneys' recommendation and extend the offer, or they could reject the recommendation. Obviously, if the defendants were to choose the second alternative, plaintiffs would have received nothing in exchange for their agreement. It is well settled that a promise by a party in the alternative is not consideration except under limited circumstances:

> A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances unless
> (a) each of the alternative performances would have been consideration if it alone had been bargained for; or
> (b) one of the alternative performances would have been consideration and there is or appears to the parties to be a substantial possibility that before the promisor exercises his choice events may eliminate the alternatives which would not have been consideration.

*Restatement (Second) of Contracts* § 77 (1981).

Where, as here, a party "has an unfettered choice of alternatives, and one alternative would not have been consideration if separately bargained for, the promise in the alternative is not consideration." *Id., comment b.* In circumstances very similar to those presented here, it has been held that an apparent promise subject to the "unfettered discretion" of a municipality's governing body to accept or reject is "a classic example of an illusory promise." *Mastaw v. Naiukow*, 306 N.W. 2d 378, 380 (Mich. Ct. App. 1981) ("Since the Detroit Common Council had unfettered discretion to accept or reject the settlement, its options were in no way limited by the supposed settlement."). Similarly in the instant case the defendants made no binding promise but

-12-

had the unfettered discretion to accept or reject the proposed terms. Hence this is a clear example of an illusory promise.

New Mexico cases have applied this principle, holding that where the purported promise to perform actually leaves it to the discretion of the promisor, the alleged promise is illusory and not consideration as a matter of law. *See Board of Education v. Hamilton Construction Co.*, 891 P.2d 556, 561 (N.M. Ct. App. 1994), *cert. denied*, 890 P.2d 1807 (N.M. 1995); *Acme Cigarette Services, Inc. v. Gallegos*, 577 P.2d 885, 889 (N.M. Ct. App. 1978). As the court explained in *Hamilton Construction*: "A valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration. It is also elementary that a contract, which leaves it entirely optional with one of the parties to perform, is not founded on mutual promises." 891 P.2d at 561 (internal citations and quotation marks omitted).

The purported contract in *Hamilton Construction* was for the purchase of real property, but the written agreement provided forty days for the buyer to complete its due diligence work "and to review and approve or reject all matters pertaining to this transaction." *Id.* at 558. The escrow arrangements provided that buyer "may" deposit funds with the escrow agent. The New Mexico court held that there was no contract: "[B]ecause Buyer's promise to perform under the Agreement and [escrow] Instructions was entirely at its discretion, any consideration contained in such a promise would be illusory." *Id*. at 561. Because the purported contract in the instant case likewise left

it entirely to the discretion of the defendants whether to accept or reject the proposed terms, we hold that the district court erred in concluding that the parties had entered into a binding contract.

In *Joseph E. Montoya and Associates v. State of New Mexico*, 704 P.2d 1100 (N.M. 1985), another ruling similar to that of the Michigan Court in *Mastaw*, 306 N.W. 2d at 380, was made. The New Mexico Supreme Court there held:

> Even without consideration of New Mexico law requiring DFA approval of state agency contracts, a contract never came into being under traditional contract principles. Part of the bargain between HSD and Montoya was that the proposed contract would not become effective unless and until DFA approval was obtained . . . Because this condition precedent was not satisfied, no contract came into being.

704 P.2d at 1102.

Defendants contend that there was consideration for the plaintiffs' promise to accept the designated sum because the attorneys were bound by their promise to recommend the settlement. Defendants correctly point out that the district judge ruled that this was the promise for which the plaintiffs had specifically bargained, as our quotation *supra* from her order shows. We conclude nevertheless that the Outline is unenforceable, even if we assume that the district judge was correct in her ruling that the plaintiffs specifically bargained for only the attorneys' promise to recommend the settlement to their clients (as opposed to bargaining for the anticipated offer of money and restoration of electrical services from the defendants under the terms of the Outline). The attorneys' promise is not consideration because the attorneys promised

only to do that which they were as counsel separately entitled to do – make a recommendation to the City and County. We assume that the attorneys promised to recommend the settlement to their clients because, in the exercise of their independent judgment and adhering to their ethical obligation of loyalty to their clients, the attorneys had concluded that it was in their clients' best interests to approve the settlement.

The dissent argues that the recommendation from the attorneys, contemplated in the Outline of Agreement, serves as consideration flowing from a third party supporting the settlement agreement as performance given "by some other person." *See Restatement (Second) Contracts* § 71(4). This contention is premised on a misconception of the City and County counsel as a third party. The misconception runs counter to the parties' and the attorneys' treatment of such counsel not as third parties, but as *agents* of the City and County. The district judge found that "Defendants, through their agents, provided adequate consideration. . .". Aplt. App. at 93. In their brief before us, the County defendants recognize that their counsel were acting as their *agents*. Response Brief of Appellees Kephart, et al. at 27 ("Plaintiffs bargained for the Defendants' agents['] promise that they would recommend the settlement to their clients"). The Response Brief of Appellees McQuitty, et al. at 24 and 25, implicitly recognizes their counsel as their agents (the offer had been "accepted by the Appellees, through counsel. . ."). Thus the recommendations of counsel to accept the settlement

-15-

must be treated as coming from the City's and County's agents, and cannot serve as third party performance given "by some other person." *Restatement (Second) Contracts* § 71 (4). [5]

In sum, the attorneys' promise is not sufficient as a matter of law to serve as consideration *from the defendants* to support this purported contract because the defendants simply made no enforceable promise. Because we have determined that there was no consideration given to the plaintiffs to make their promise enforceable at law, we need not reach other issues raised by the plaintiffs.

## IV

The judgment of the district court is **reversed** and the case is remanded for further proceedings.

---

[5] Moreover the wording of the Outline of Agreement refutes the dissent's suggestion that the agreement contained "no such language" as that in *Montoya v. State of New Mexico*, 704 P.2d at 1101, showing that the agreement in *Montoya* was not to be effective until a given date or approval by a state Department. To the contrary, the Outline of Agreement in the instant case clearly conditioned the duty of the plaintiffs to accept the settlement, saying " *if said sum of $237,500 is jointly offered as indicated above . . .* they [plaintiffs] will accept said offer." Aplt. App. at 108.

**Heuser v. Kephart**, Case No. 98-2233
**EBEL, Circuit Judge, dissenting**

I disagree with the majority's conclusion that the settlement outline fails for lack of consideration. In my view, the promise of the City and County attorneys to recommend ratification of the settlement constitutes sufficient third-party consideration to support an agreement. I therefore respectfully dissent.

The cases relied upon by the majority are not persuasive under the facts presented by this case. First, the majority notes that the New Mexico Supreme Court has held that, absent emergency circumstances or preauthorization, an attorney may not "'compromise his client's cause of action.'" Augustus v. John Williams & Assocs., Inc., 589 P.2d 1028, 1030 (N.M. 1979) (quoting Hayes v. Eagle-Picher Indus., Inc., 513 F.2d 892, 893 (10th Cir. 1975); see Majority Opinion at n.3. The Augustus case, however, does not describe the situation we are presently addressing. In the case at bar, the lawyers merely supplied valid third-party consideration in the form of a promise to recommend the settlement to their clients.[1] They did not, as the Augustus case prohibits, affirmatively bind the City

_____

[1] The majority opinion dismisses the possibility that the attorneys supplied third-party consideration because, the opinion states, the parties have chosen to characterize the attorneys as agents of the City and County. However, even assuming that the attorneys did not act both as agents for the City and County and as third parties, the majority's point is misguided. If acting as agents, then the attorneys' promise affirmatively to recommend the settlement is direct consideration flowing from the promisee. The fact remains that the Heusers bargained for this affirmative act by the attorneys, and it was a meaningful

(continued...)

or County or otherwise compromise their interests.  Rather, they made a promise that induced the Heusers to agree to the settlement.

The majority also cites cases for the proposition that "where the purported promise to perform actually leaves it to the discretion of the promisor, the alleged promise is illusory and not consideration as a matter of law."  Majority Opinion at 13 (citing  Board of Educ. v. Hamilton Constr. Co. , 891 P.2d 556, 561 (N.M. Ct. App. 1994);  Acme Cigarette Servs., Inc. v. Gallegos , 577 P.2d 885, 889 (N.M. Ct. App. 1978)). [2]  This discussion likewise overlooks the presence of third-party consideration in the present case.  Although the City retained the option of either approving or rejecting the proposed settlement, the attorneys obligation to recommend the settlement was firm and definite.

I would conclude that the attorneys promise to recommend the settlement was sufficient consideration supporting the settlement agreement.  It is well-settled that

---

[1](...continued)
restraint on the attorneys' freedom which constitutes adequate consideration, regardless of whether it is viewed as third-party consideration or party consideration.

[2] I also note that the majority's reliance on  Joseph E. Montoya & Assocs. v. State of New Mexico , 704 P.2d 1100 (N.M. 1985) is misplaced because that case is plainly distinguishable from the present facts.  The alleged agreement in Montoya contained a explicit provision stating that the agreement was not to become effective until "January 1, 1983, or upon approval by the Department of Finance and Administration, whichever is later."  Id. at 1102.  The outline at issue in the case at bar contains no such language, and that case did not involve third-party consideration as is the case here.

consideration may flow from a third-party. See Restatement (Second) of Contracts § 71(4) ("The performance or return promise may be given to the promisor or to some other person. *It may be given by the promisee or by some other person* .") (emphasis added); 2 Corbin on Contracts § 5.11 (1995 Rev. Ed.) ("[I]n this country it is indisputable that the consideration need not move from the promisee.").

The majority seeks to dismiss the value of the attorneys' promise as consideration "because the attorneys promised to do that which they were as counsel separately entitled to do – make a recommendation to the City and County." Majority Opinion at 15. The majority then explicitly "assume[s] that the attorneys promised to recommend the settlement to their clients because, in the exercise of their independent judgment and adhering to their ethical obligation of loyalty to their clients, the attorneys had concluded that it was in their clients' best interests to approve the settlement." Id. This reasoning is misguided. The attorneys had an ethical and professional obligation to present the settlement to their clients, but they were under no duty to affirmatively recommend it. Furthermore, the assumption that the attorneys must have concluded that it was in their clients' best interest to accept the settlement is unfounded. The attorneys may very well have concluded that this was the best settlement offer that they could negotiate with the Heusers, but that it was perhaps still too generous. Whatever tension might exist between the lawyers' promise to recommend the settlement and their professional obligation

-3-

not to advise a client to accept an undesirable settlement does not alter the fact that the attorneys are not obligated to affirmatively recommend every settlement offer presented to their clients.

Here the Heusers obtained a clear commitment from the City's and County's attorneys to recommend the settlement for adoption. That commitment was an obvious benefit to the Heusers, as it would greatly facilitate the likelihood that the City and County would approve the settlement. It was similarly a detriment to the attorneys, who thereby diminished their own options. Whatever implication this may have had as between the City and County and its attorneys is of no consequence to the Heusers. From the Heusers' perspective, the commitment by the City's and County's attorneys was clear and valuable consideration, and in my opinion, it supports the settlement agreement.

Thus, I would find that the attorneys' promise represented valid third-party consideration supporting the agreement. I respectfully dissent.