## WELLINGTON-SEARS & COMPANY v. DIZE AWNING AND TENT COMPANY.

(Filed 20 March, 1929.)

1. **Contracts—Construction and Operation—General Rules of Construction.**

   If a contract is susceptible of two constructions, one of which will make it enforceable and the other unenforceable, the former construction will generally be preferred.

**2. Same.**

    If an instrument is susceptible of two constructions, one of which makes it an executory contract and the other an option, the latter will be rejected because by the other construction mutual rights are conferred.

**3. Contracts—Requisites and Validity—Consideration—Executory Contracts—Mutual Promises.**

    Where an executory contract contains several promissory covenants on both sides, it is not necessary that each promise on one side be supported by an obligation or promise on the other if it is a part of an entire contract which is supported by sufficient consideration.

**4. Same—Covenants Not To Sue—Terms of Credit.**

    Where there is a contract for the sale of certain goods at a stipulated price with the provision that if the production of the mill manufacturing them should be curtailed by strikes or unavoidable cause, deliveries thereunder were to be made in proportion to production, with further agreements that delay or defect in quality in any delivery should not be cause for canceling any portion of the contract other than the delivery in question, and that the contract should be subject to regulation by the seller of the amount of credit to be extended: *Held,* the contract is entire and supported by sufficient consideration, and is binding on both parties.

APPEAL by defendant from *MacRae, Special Judge,* at May Term, 1928, of FORSYTH. Affirmed.

The parties duly executed the following paper:

No. 3011.

Office of

WELLINGTON-SEARS & Co.

    93 Franklin St., Boston.        66 Worth St., New York.

Sold to Dize Awning & Tent Company, Winston-Salem, N. C.

    About fifty thousand (50,000) Yds. 30-in. 8.42 oz. Army Duck.

    Price. 25¼c per yard.

    Terms: 2% 10 days net 60—FOB Mill, actual freight allowed to destination not exceeding $1 per cwt.

    Delivery: Specifications to be furnished by 15 November, 1925, for shipment not later than 27 February, 1926.

    Shipping Directions: Dize Awning & Tent Co., Winston-Salem, N. C.

    If the production of the mill making these goods shall be curtailed during the life of this contract by strikes, lockouts or any unavoidable cause, deliveries shall be made and accepted in proportion to the production. Buyer agrees that delay, or defect in quality, in any delivery shall be no cause for canceling any portion of this contract, other than

the delivery in question. It is expressly agreed that this order is subject to regulation by the seller of the amount of credit to be extended hereunder.

    Accepted:   WELLINGTON-SEARS & COMPANY.
        By (S)   J. W. Proctor.
           (S)   Dize Awning & Tent Co.
           (S)   E. G. Dize.

Boston, 24 October, 1925.

The plaintiff brought suit upon the defendant's failure to comply with the contract, setting up two causes of action, one under the law of the forum, and the other under the law of what is claimed to be the place of the contract—*i. e.,* the Commonwealth of Massachusetts. It is alleged in the complaint that the defendant accepted and paid for 9,813 yards of army duck and refused to accept and pay for 40,187 yards, and that by reason of this refusal and the decline in the market price the plaintiff suffered a loss of $2,712.62. The plaintiff asks judgment for this amount with interest from 18 October, 1926.

The action was brought in the Forsyth County court, and after the jury had been empaneled the defendant demurred *ore tenus* to the complaint on the following grounds: (1) The paper-writing sued on does not constitute a contract binding upon the defendants for the reason that the specification of the amount of goods to be purchased is too indefinite to be enforceable. (2) The following provisions made the contract void for want of mutuality: (a) "If the production of the mill making these goods shall be curtailed during the life of this contract, by strikes, lockouts, or any unavoidable cause, delivery shall be made and accepted in proportion to the production. (b) Buyer agrees that delay or defect in quality in any delivery shall be no cause for canceling any portion of this contract other than the delivery in question. (c) It is expressly agreed that this order is subject to regulation by the seller of the amount of credit to be extended hereunder." (3) If the paper-writing is a contract governed by the law of Massachusetts, the plaintiff's remedy is under section 52, paragraph 3, chapter 106 of the General Laws 1921 of that Commonwealth, and it appears upon the face of the pleadings that the plaintiff has elected to bring suit under section 54 for rescission. On the plaintiff's appeal to the Superior Court the judgment of the county court was reversed and the cause was remanded for trial. The defendant excepted and appealed.

*J. E. Alexander and L. M. Butler for plaintiff.*
*Ratcliff, Hudson & Ferrell for defendant.*

ADAMS, J.  The appellant has abandoned all assigned grounds of demurrer except its position in reference to the last two sentences (b and c) in the written instrument which is the subject of the controversy. It is contended that these clauses make the plaintiff's promise illusory; that the plaintiff reserved complete protection against total nonperformance on its part; and that it retained the privilege of refusing to make any shipment to the defendant unless it chose to extend credit upon its own terms.  To these contentions the appellant seeks to apply the principle that where a contract consists only of mutual promises there must be mutuality of obligation, and that where performance is dependent upon the will of one party the purported agreement does not constitute a contract.  We do not concur in this interpretation.

If a contract is susceptible of two constructions one of which will make it enforceable and the other unenforceable, the former construction will generally be preferred.  *Torrey v. Cannon,* 171 N. C., 519; *Edwards v. Ins. Co.,* 173 N. C., 614.  And as between two possible constructions, one of which makes the instrument an executory contract and the other an option the latter will be rejected because by the other construction mutual rights are conferred upon the contracting parties. 4 Page on Contracts, sec. 2050.

Mutuality of promises means that promises to be enforceable must each impose a legal liability upon the promisor.  Each promise then becomes a consideration for the other.  Want of mutuality is merely one form of want of consideration.  But a single consideration may support several promises; it is not necessary that each promise have a separate consideration.  Hence, a covenant which imposes obligations upon one party only may be enforceable if it is part of an entire contract which is supported by a sufficient consideration.  1 Page on Contracts, secs. 525, 565 *et seq.;* 1 Williston on Contracts, sec. 141.

The paper is not lacking in mutuality of consideration.  Mutuality of promises is manifest.  The plaintiff contracts to sell to the defendant 50,000 yards of army duck on certain terms, and the defendant contracts to accept the goods and to pay the price.  The parties evidently did not contemplate a shipment of all the goods at one time or in one bulk.  The specifications were to be furnished by 15 November, 1925, so that the goods might be shipped not later than 27 February, 1926. One shipment was made 30 December, 1925, and another 5 January, 1926.  The words "any delivery" imply the possibility of more than one shipment.  To meet this situation the defendant agreed that delay or defect in quality in a single delivery of the duck should not be cause for cancellation of the entire contract, or a cause of action for breach of the entire contract; but he did not contract against his right to bring

suit for any loss caused by the plaintiff's delay in making "the delivery in question," or by any defect in the quality of the goods.

This agreement is not a discharge of the plaintiff from liability for breach of his contract; it is not a covenant not to sue. Nor is it a unilateral promise similar to that in *Rankin v. Mitchem,* 141 N. C., 277. There the contested claim was held to be unilateral because it was not intended to bind the defendant and did not purport to impose upon him any obligation; but here the obligation assumed by the defendant is only a part of an entire contract which is supported by a valuable consideration. The contract does not, as we understand it, confer upon the plaintiff an unlimited right to determine the nature or extent of his performance so as to make his promise illusory. He is bound by the terms of his contract and is liable in damages for its breach. *Forbes v. Mill Co.,* 195 N. C., 51.

The sentence relating to the extension of credit must be construed in connection with other parts of the contract. If, as we have said, the parties contemplated the probable delivery of the goods in installments, a stipulation that the seller should regulate or limit the amount of the unpaid installments would not avoid the contract or render it unenforceable; and this, we apprehend, is as distinctly one of the purposes of the provision as a desire to guard against the possible intervening insolvency of the debtor. *Slater v. Refining Corporation,* 110 S. E. (Ga.), 759; *Mendel v. Converse & Co.,* 118 S. E., (Ga.), 587, 879; *Seed Co. v. Jennette Bros.,* 195 N. C., 173.

The judgment of the Superior Court overruling the demurrer is

Affirmed.