GEORGE H. OWENS et al., Appellants, v. ANGELA R. LOMBARDI, Respondent.

Fourth Department, May 24, 1973.

G. William Lemax for appellants.

Contiguglia, Contiguglia & Contiguglia (Louis P. Contiguglia of counsel), for respondent.

SIMONS, J. Appellants are husband and wife and joint owners of property near Skaneateles Lake. The property is not located on the lake front but has rights in common with several other landowners across a parcel known as Lot 5 which is bounded on the lake to the east and a public roadway to the west. Respondent is the owner of Lot 4 in the subdivision which is bounded similarly by the lake and roadway and is immediately south of Lot 5. In a prior action, respondent asserted owner-

ship to all or part of Lot 5 by adverse possession. Several other owners claiming an interest in Lot 5 resolved the dispute with respondent. Appellants did not. Their case has had a tortured history of delays, including a change of attorneys by appellants, and at least one default by them, later vacated upon application. Finally, the case was set down for trial on a day certain, August 2, 1971. On that day, the parties appeared with their attorneys and witnesses. Before the trial began, they entered into negotiations which lasted throughout the day and culminated before the Judge in his chambers about 5:30 or 6:00 P.M. in the evening with settlement terms transcribed by the court stenographer. The stipulation was prepared on a yellow paper by appellants' attorney, read into the record by him and agreed to on the record by the attorneys for both sides. The Trial Judge also recorded the fact of settlement in his minute book. Mr. Owens and Mr. Lombardi, respondent's husband, were present in chambers but no comment by either of them was recorded by the stenographer. Mrs. Owens was not present in the courthouse at the time of settlement although she had been there with her husband throughout the day and joined him in his conferences with their attorney as the negotiations progressed. After the meeting in the Judge's chambers, the interested parties and attorneys left the court considering that the possibility of trial was concluded. None expected to return the next day.

Before the stipulation was formalized in an order, appellant George Owens read the transcript and notified his attorney and the court that he did not agree to its terms and objected to an order being entered. Nevertheless, respondent's counsel subsequently submitted a proposed order embodying the terms of the settlement which conveyed a permanent easement over a 10-foot strip of part of Lot 5 to respondent and a temporary "license" and a temporary "restriction" to respondent over smaller strips of Lot 5 for planting shrubbery and for access to Mrs. Lombardi's dock.

This action was commenced to vacate the order containing the terms of settlement and requesting that respondent's adverse possession action be restored to the trial calendar for disposition. The cause was tried before a Judge other than the Judge presiding during the settlement and it was found after hearing the testimony that appellants' attorney had authority to settle the action on behalf of his clients, and that the parties had voluntarily and knowingly entered into a binding stipulation of settlement in "open court", i.e., on the record.

If the agreement of settlement was complete when dictated into the record and assented to by the parties or by their

attorneys acting within the authority delegated to them, then it is binding notwithstanding the fact that the record was actually made in the Judge's chambers rather than in the courtroom (CPLR 2104; *Whipple Bros.* v. *Andrew,* 37 A D 2d 677; *Langlois* v. *Langlois,* 5 A D 2d 75). The transcript of the proceedings serves to establish the terms of the settlement and avoid conflicting claims of what the parties intended (*Matter of Dolgin Eldert Corp.,* 31 N Y 2d 1). Furthermore, the fact that the appellant sought to disavow the settlement before the order was signed and entered would not defeat an otherwise valid agreement (*Golden Arrow Films* v. *Standard Club of Cal.,* 38 A D 2d 813, mot. for lv. to app. granted 30 N Y 2d 486; *Ariel* v. *Ariel,* 5 A D 2d 168). Once made, a settlement agreement terminates the litigation and a new superseding agreement arises which is the measure of each party's obligation to the other (*Yonkers Fur Dressing Co.* v. *Royal Ins. Co.,* 247 N. Y. 435, 444; *Langlois* v. *Langlois, supra*). Finally, it is important to this decision to cite authority which holds that a settlement agreement will not be impaired because of any restriction of the Statute of Frauds (General Obligations Law, §§ 5–1111, 5–703; *Anders* v. *Anders,* 6 A D 2d 440, 441–442; and cf. *Matter of Dolgin Eldert Corp., supra,* p. 8, n.).

A litigant is always free to submit his case to the trier of the facts and accept the result, come what may. If that is his considered course, then he must be allowed to take it, for an attorney may not settle the case and conclude his client without the client's consent (*Barrett* v. *Third Ave. R.R. Co.,* 45 N. Y. 628, 635; *Countryman* v. *Breen,* 241 App. Div. 392, affd. 268 N. Y. 643; *Mazzella* v. *American Home Constr. Co.,* 12 A D 2d 910).

The central issue in this case is whether appellants' attorney had authority to act for his clients in making the settlement. The evidence at the trial established that he had that authority. Mr. Owens either tacitly consented to the settlement or by his actions conferred authority on his attorney to do so. He was present in the courthouse throughout the day and discussed the details of his case and various proposals for settlement several times with his attorney. When the permanent easement issue became troublesome, he suggested resolution of the other points in dispute before returning to an acceptable description of the permanent easement. He examined the pencilled stipulation on his attorney's legal pad before entering the Judge's chambers to place it on the record. If he did not read it or if he read it but did not question it, he must accept the responsibility for that failure. By all his actions throughout the litigation, he

gave evidence that he was not an unlettered submissive client requiring guidance on the meaning of the proceedings and specifications of settlement from his attorney. Mr. Owens went into the chambers and stood silently by and listened to his attorney dictate the stipulation into the record and consent to settlement of the case. He is bound by that consent (*Hurwitz* v. *Hurwitz*, 216 App. Div. 362, 368). It is not startling that the agreement did not express his preferred terms for settlement. Compromise agreements rarely satisfy all the parties to them. The Trial Judge found as a fact that Mr. Owens knowingly clothed his attorney with authority to settle the case, despite his present disclaimers and there is no reason to upset that finding.

Mrs. Owens was not present in the courthouse when the stipulation of settlement was dictated to the court stenographer. Significantly, she does not claim that authority was lacking to bind her in this fashion, only that the authority to do so was exceeded and that the settlement did not express her true intentions. She is estopped from raising that claim at this time (*Farr* v. *Newman*, 18 A D 2d 54, 60, affd. 14 N Y 2d 183; *Warren* v. *Hoch*, 276 App. Div. 607; *Joehl* v. *Tricarico*, 271 App. Div. 898). Mrs. Owens attended court throughout the day and although her role was essentially passive, she was present during all the negotiation conferences with her attorney. She admittedly knew that a compromise was planned that day and that it necessarily involved a transfer of an easement or some part of her interest in the real estate. Her attorney testified that he explained the substance of the settlement to her before she left and believed that she agreed to it. Nevertheless, at a time when the energies of everyone involved were directed toward putting the terms of settlement in final form and realizing that the discussions were coming to a conclusion imminently, she went home and left the protection of her rights in the hands of others, rather than remain and concur in the settlement. While it would have been better practice to require the parties to articulate their consent to a stipulation of settlement for the record, nevertheless Mrs. Owens's participation in the case leaves little doubt that her interests and desires were entirely congruent with those of her husband and that she intended that her husband and attorney would have the authority to protect them. Subsequent to the settlement, Mr. Owens, not his wife, was the party objecting to the settlement terms. She apparently had no objections to the agreement independent of those stated by her husband. At least she never voiced disapproval until this action was commenced. The trial court properly found that her failure to

continue her participation and her disregard for a settlement that would affect her own property rights, foreclosed her from questioning the authority of those who acted for her.

The judgment should be affirmed.

MARSH, CARDAMONE and HENRY, JJ., concur.

Judgment unanimously affirmed with costs.