JAMES W. POWELL, JR., PLAINTIFF V. CITY OF NEWTON, A MUNICIPAL CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF V. SHAVER WOOD PRODUCTS, INC., A NORTH CAROLINA CORPORATION AND DICKSON ENGINEERING, INC., A NORTH CAROLINA CORPORATION, THIRD-PARTY DEFENDANTS

No. COA08-1262

(Filed 20 October 2009)

**1. Compromise and Settlement— enforcement of settlement agreement—statute of frauds**

The trial court did not err by enforcing a settlement agreement because the essential terms of the contract were reduced to writing. Under judicial estoppel, plaintiff was not permitted to later assert in open court in the presence of a trial judge that he had not agreed to surrender a quitclaim deed to the disputed property in exchange for $40,000.

**2. Compromise and Settlement— binding settlement agreement—sufficiency of evidence**

The trial court did not err by concluding as a matter of law based on competent record evidence that the parties had entered into a valid and binding settlement agreement of all issues.

**3. Appeal and Error— appellate rules violations—not sufficiently egregious to warrant dismissal**

The trial court did not err by dismissing defendants' cross-appeal seeking dismissal of plaintiff's appeal based on appellate rules violations, including untimely service of information concerning the transcript and proposed record on appeal, because the rules violations were not sufficiently egregious to warrant dismissal.

Judge WYNN dissenting.

Appeal by plaintiff from an order entered 27 May 2008 by Judge Yvonne Mims Evans and cross-appeal by defendant and third-party defendants from an order entered 19 August 2008 by Judge W. Robert Bell in Catawba County Superior Court. Heard in the Court of Appeals 5 May 2009.

*Crowe & Davis, P.A., by H. Kent Crowe, for plaintiff-appellant/cross-appellee.*

*Hamilton Moon Stephens Steele & Martin, PLLC, by Rebecca K. Cheney for third-party defendant-appellee/cross-appellant W.K. Dickson & Co., Inc.*

*Baucom Claytor Benton Morgan & Wood, PA, by M. Heath Gilbert, Jr. for defendant/third-party plaintiff-appellee/cross-appellant City of Newton.*

*Pope, McMillan, Kutteh, Privette, Edwards & Schieck, PA, by William P. Pope, for third-party defendant-appellee/cross-appellant Shaver Wood Products, Inc.*

JACKSON, Judge.

James W. Powell, Jr. ("plaintiff") appeals the 27 May 2008 order requiring him to execute a settlement agreement and quitclaim deed. Defendant City of Newton ("the city"), third-party defendant Shaver Wood Products, Inc. ("Shaver"), and third-party defendant W.K. Dickson Engineering, Inc. ("Dickson") (collectively "defendants") appeal the 19 August 2008 order denying their motion to dismiss plaintiff's appeal. For the reasons stated below, we affirm.

Plaintiff owns land located on Jacobs Fork River in Catawba County. Plaintiff's land abuts land owned by the city. In 2004, the city decided to build a public park on its land, retaining Dickson to oversee the project. The city retained Shaver to harvest timber from an area which needed to be cleared for the construction project. On 2 December 2005, plaintiff filed a complaint against the city alleging, *inter alia*, that the city had improperly cut and removed hardwood trees from his land. On 2 November 2006, the city filed a third-party complaint against Dickson and Shaver seeking indemnification.

On 14 November 2007, during a trial on the matter, the parties informed the court that they had reached an agreement in settlement of their dispute. In exchange for plaintiff's execution of a quitclaim deed to the disputed land, the city agreed to pay plaintiff $30,000.00, while Dickson and Shaver agreed to pay plaintiff $5,000.00 each, for a total sum of $40,000.00. Attorneys for defendants and for plaintiff agreed to those terms. When asked if that was the agreement, plaintiff responded, "I don't have any choice." Plaintiff's attorney informed him that he did have a choice. The court again asked plaintiff if that was his agreement, to which plaintiff responded, "Yes,

that's my agreement." Counsel for the city noted that the agreement was subject to approval by the city council but that it was a mere technicality.

Thereafter, on 21 November 2007, a proposed written agreement was exchanged between attorneys. The proposed agreement was modified and forwarded to the parties on 27 November 2007. Additional correspondence was exchanged on 12 December 2007, regarding the draft quitclaim deed. Plaintiff refused to execute the agreement or abide by its terms; he claimed that the agreement was not knowingly, freely, and voluntarily made, and that it was coerced. On 30 January 2008, defendants sought a court order to enforce the settlement agreement. Plaintiff then discharged his attorney. The matter was heard on 5 May 2008, and the trial court entered its order enforcing the settlement agreement on 27 May 2008. Plaintiff appeals.

After plaintiff noticed his appeal, defendants filed motions to dismiss the appeal based upon violations of the North Carolina Rules of Appellate Procedure. On 19 August 2008, the trial court denied the motions. Defendants appeal.

[1] Plaintiff first argues that the trial court erred in enforcing the purported settlement agreement because it is void pursuant to the statute of frauds. We disagree.

"A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000) (citing *Casualty Co. v. Teer Co.*, 250 N.C. 547, 550, 109 S.E.2d 171, 173 (1959)). Matters of contract interpretation are questions of law. *Davison v. Duke University*, 282 N.C. 676, 712, 194 S.E.2d 761, 783 (1973) (citations omitted). This Court reviews questions of law *de novo*. *Staton v. Brame*, 136 N.C. App. 170, 174, 523 S.E.2d 424, 427 (1999) (citing *Al Smith Buick Co. v. Mazda Motor of America*, 122 N.C. App. 429, 470 S.E.2d 552 (1996)).

Pursuant to North Carolina General Statutes, section 22-2, "[a]ll contracts to sell or convey any lands, . . . or any interest in or concerning them, . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." N.C. Gen. Stat. § 22-2 (2007). Contracts within the

meaning of this section are required to be in writing, to prevent frauds and injuries. *Winberry v. Koonce*, 83 N.C. 351, 354 (1880). "The statute of frauds was designed to guard against fraudulent claims supported by perjured testimony; it was not meant to be used by defendants to evade an obligation based on a contract fairly and admittedly made." *House v. Stokes*, 66 N.C. App. 636, 641, 311 S.E.2d 671, 675, *cert. denied*, 311 N.C. 755, 321 S.E.2d 133 (1984).

The statute of frauds requires "that all essential elements of the contract be reduced to writing." *Yaggy v. B.V.D. Co.*, 7 N.C. App. 590, 600, 173 S.E.2d 496, 503, *cert. denied*, 276 N.C. 728 (1970). "[T]he parties, the purchase price, and the property to be sold [—] 'These are the essential elements of the contract.'" *Currituck Assocs.- Residential P'ship v. Hollowell*, 166 N.C. App. 17, 28, 601 S.E.2d 256, 264 (2004) (citing *Yaggy*, 7 N.C. App. at 600, 173 S.E.2d at 503).

Here, in open court, the parties—plaintiff, the city, Dickson, and Shaver—agreed that defendants would pay to plaintiff $40,000.00 in exchange for plaintiff's executing a quitclaim deed to the subject property. A transcript of the parties' discussion with the trial court with respect to these basic elements was reduced to writing. In addition, the parties exchanged correspondence and a proposed "Settlement Agreement and Release" specifying the terms of the agreement more specifically, as well as a draft quitclaim deed. There can be no doubt that the essential terms of the contract were reduced to writing. The question before this Court is whether the writings were "signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized" as required by the statute of frauds. N.C. Gen. Stat. § 22-2 (2007).

We note that this was not some barroom conversation between drunken neighbors, agreed to in jest, and written on a random scrap of paper. *See Lucy v. Zehmer*, 84 S.E.2d 516 (Va. 1954). This was an agreement among four parties represented by counsel, in a court of law, supervised by the presiding judge, who inquired of each party whether the proposed terms were agreeable. The party to be charged—plaintiff—confirmed, "Yes, that's my agreement." Under these circumstances, we cannot sanction plaintiff's conduct in disavowing the agreement by refusing to sign the document memorializing its terms in writing.

This concept may best be viewed in terms of judicial estoppel. In *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 591 S.E.2d 870 (2004), our Supreme Court set forth this State's version of the doctrine, taken

from the United States Supreme Court case of *New Hampshire v. Maine*, 532 U.S. 742, 149 L. Ed. 2d 968 (2001).

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship*, 358 N.C. at 29, 591 S.E.2d at 888-89 (internal quotation marks and citations omitted). The essence of the doctrine is "to protect the integrity of the judicial process," *id.* at 28, 591 S.E.2d at 888, a central concern when, as here, a superior court judge has been personally involved in and sanctioned in open court, settlement of a pending case. Although our research discloses no North Carolina cases that have squarely addressed this issue, we believe that the reasoning of the Appeals Court of Massachusetts is persuasive.

> The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process. That concern would be ill served if those intimately involved in that process, litigants, attorneys, and judges, could not rely on declarations of settlement made to the court. The force of oral agreements made in open court and acted on by the court, even in the face of statutory requirements of formality has long been recognized. It defies logic and fundamental principles of fairness to allow a represented party who has sought justice in a forum to contradict and undermine an agreement it reached and acknowledged in that same forum, especially when the judge and other litigants appear to have relied on that acknowledgement [sic].

*Correia v. DeSimone*, 614 N.E.2d 1014, 1016 (Mass. App. Ct. 1993) (internal quotation marks and citations omitted). "There is a strong judicial interest in the prompt reporting of settlements which militates against permitting the Statute of Frauds to be raised as a defense to the enforcement of a settlement agreement." *Id.*

Plaintiff's current position that he did not agree to surrender a quitclaim deed in exchange for $40,000.00 clearly is inconsistent with

his position before the trial judge that "[T]hat's my agreement." The judge was persuaded to accept plaintiff's earlier position; the trial judge dismissed the jury and discontinued proceedings. Acceptance of plaintiff's current position is simply untenable under these circumstances. If not estopped, plaintiff would impose an unfair detriment to defendants, who proceeded believing there was an agreement to settle the case. Pursuant to the doctrine of judicial estoppel, plaintiff ought not be permitted to now assert that he did not agree in open court in the presence of a trial judge to surrender a quitclaim deed to the disputed property in exchange for $40,000.00.

" '[A] writing or memorandum is 'signed' in accordance with the statute of frauds if it is signed by the person to be charged by any of the known modes of impressing a name on paper, namely, by writing, printing, lithographing, or other such mode, provided the same is done with the intention of signing.' " *Yaggy*, 7 N.C. App. at 598, 173 S.E.2d at 501 (quoting *Bishop v. Norell*, 353 P.2d 1022, 1025 (1960)). "The signing of a paper writing or instrument is the affixing of one's name thereto, with the purpose or intent to identify the paper or instrument, or to give it effect as one's act." *McCall v. Institute*, 189 N.C. 775, 782, 128 S.E. 349, 353 (1925) (citation omitted). The "party to be charged" includes "some other person by him thereto lawfully authorized." N.C. Gen. Stat. § 22-2 (2007).

> [T]here is a presumption in North Carolina in favor of an attorney's authority to act for the client he professes to represent. This presumption applies to both procedural and substantive aspects of a case. Special authorization from the client is required before an attorney may enter into an agreement discharging or terminating a cause of action on the client's behalf. Where special authorization is necessary in order to make a dismissal or other termination of an action by an attorney binding on the client . . . it [is also] presumed . . . that the attorney acted under and pursuant to such authorization. One who challenges the actions of an attorney as being unauthorized has the burden of rebutting this presumption and proving lack of authority to the satisfaction of the court.

*Harris*, 139 N.C. App. at 829, 534 S.E.2d at 654-55 (internal quotation marks and citations omitted). Plaintiff did not object to his counsel's participation in court discussions with respect to the terms of the settlement agreement. In fact, plaintiff admitted that the proposed terms constituted his agreement. At the time the agreement was reached in open court, plaintiff's attorney had authority to act on plaintiff's

behalf to settle the suit. Further correspondence with respect to the details of that agreement were confirmatory in nature and prior to plaintiff's dismissal of counsel.

"The statute [of frauds] does not require all of the provisions of the contract to be set out in a single instrument. The memorandum required by the statute is sufficient if the contract provisions can be determined from separate but related writings." *Hines v. Tripp*, 263 N.C. 470, 474, 139 S.E.2d 545, 548 (1965) (citations omitted). The parties, by their conduct, impliedly agreed to conduct themselves via electronic means, subjecting themselves to the provisions of the Uniform Electronic Transactions Act. *See* N.C. Gen. Stat. § 66-315(b) (2007). Pursuant to that Act, plaintiff's counsel affixed his electronic signature to emails concerning the transaction. *See* N.C. Gen. Stat. § 66-312(9) (2007). When the hearing transcript, draft agreement, draft quitclaim deed, and associated emails are read together, as permitted by the statute of frauds, the settlement agreement that plaintiff was ordered to execute is in total compliance with the statute of frauds. Therefore, the trial court did not err in ordering plaintiff to execute the agreement.

This result is consistent with other jurisdictions that have considered the issue. In *Szymkowski v. Szymkowski*, 432 N.E.2d 1209 (Ill. App. Ct. 1982), in which the parties agreed in open court to settle their dispute by the payment of $10,000.00 in exchange for a quitclaim deed, the Illinois Court of Appeals held that

> [w]hen the trial court assents to a settlement, thereby rendering the sale one pursuant to order of the court, the trial court has impliedly made a determination as to the parties' consent and their attorneys' authority. The safeguards of the Statute of Frauds are fully met when a settlement is reached in open court in the presence of the parties.

*Id.* at 1212.[1]

In *Fuchs v. Fuchs*, 409 N.Y.S.2d 414 (1978), the Supreme Court of New York enforced a settlement agreement entered into in open court but not executed thereafter. The Court held that "the transcript of the proceedings serves to establish the terms of the settlement and avoid conflicting claims as to what the parties intended. We

---

1. We note with caution, however, that the Illinois statute of frauds has a provision that it does not apply to "sales . . . by any officer or person pursuant to a judgment or order of any court in this state." 740 Ill. Comp. Stat. 80/2 (2008).

are in agreement with those courts which have held the Statute of Frauds to be inapplicable in these circumstances." *Id.* at 415 (citations omitted).

> The oral stipulation was "definite and complete" and not a mere "agreement to agree" at some future time. It is clear that, under the terms of the agreement, the date of the oral stipulation was regarded as the date of settlement. The fact that certain aspects of the agreement were to be reduced to writing at a later date is not dispositive, since the parties gave "[m]utual manifestations of assent that are in themselves sufficient to make a contract[.]"

*Id.* (citations omitted). *See also Owens v. Lombardi,* 343 N.Y.S.2d 978, 981 (1973) ("[A] settlement agreement will not be impaired because of any restriction of the Statute of Frauds."); John D. Calamari & Joseph M. Perillo, Contracts H.B. § 19-30(b) (3d ed. 1987) ("It seems to be well settled that an oral stipulation made in open court satisfies the Statute of Frauds even though the record is not signed by the party to be charged.").

Based upon the foregoing, we cannot agree with plaintiff's contention that the statute of frauds bars the order requiring that he execute the settlement agreement he entered into in open court. Plaintiff's assignment of error is overruled.

**[2]** Plaintiff also argues that the trial court erred in concluding as a matter of law that the parties had entered into a valid and binding settlement agreement of all issues. We disagree.

Plaintiff appears to contend that the trial court did not support this conclusion of law with adequate findings of fact. Plaintiff states that "before the matter was completely resolved by a jury, the Appellees filed motions to enforce the terms of negotiations[.]" Plaintiff did not enter into "negotiations" in open court; plaintiff settled his case. He listened to the attorneys relate the terms of the settlement agreement to the judge, who then questioned each of the parties as to their assent to the terms as stated. Plaintiff informed the judge that "that's *my* agreement" (emphasis added).

The trial court concluded as a matter of law that "[p]laintiff entered into a valid and binding settlement of all issues" and that defendants were entitled to enforce that settlement. In support of that conclusion, the trial court made the following findings of fact:

> 2. During the course of the Trial, counsel for Plaintiff, Defendant City of Newton and Third-Party Defendants, Shaver Wood

Products, Inc. and W.K. Dickson Engineering, Inc. advised the Court that the parties had reached a settlement of all pending issues;

3. The terms and conditions of the settlement were recited into the record, and the presiding Judge, the Honorable James W. Morgan, confirmed with Plaintiff, James W. Powell, that he knowingly and voluntarily entered into the settlement of all issues, and further, the Court confirmed the terms and conditions of the settlement with Plaintiff;

4. That the terms and conditions of the settlement were thereafter confirmed in writing via electronic mail communications between counsel for Plaintiff and Defendant;

5. That the sum of $40,000.00 was delivered to counsel for Plaintiff along with a Settlement Agreement and Release and quitclaim deed, but Plaintiff failed and refused to execute said documents and failed and refused to consummate the settlement as agreed.

These findings of fact are supported by competent evidence in the record and are sufficient to support the trial court's conclusion of law. This argument is without merit.

[3] In their cross-appeal, defendants argue that the trial court erred in not dismissing the appeal for appellate rules violations. They contend that pursuant to *Dogwood Dev. and Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008), the violations were sufficiently gross to warrant dismissal. We disagree.

Defendants contend that the appeal should have been dismissed because (1) information concerning the transcript was not timely served, notwithstanding the fact that the transcript itself was served more than two weeks prior to the filing of the notice of appeal, pursuant to Rule 7(a) of the North Carolina Rules of Appellate Procedure, and (2) the proposed record on appeal was not timely served, pursuant to Rule 11(a) and (b). Defendants filed a motion with this Court to dismiss the appeal for the same rules violations. We denied the motion. We do not deem these rules violations sufficiently egregious to warrant dismissal of plaintiff's appeal.

Affirmed.

Judge HUNTER, JR., Robert N. concurs.

POWELL v. CITY OF NEWTON

[200 N.C. App. 342 (2009)]

Judge WYNN dissents in a separate opinion.

WYNN, Judge, dissenting.

"Land is regarded as such a high species of property that exceptional safeguards have been devised for the preservation and security of its title . . . ."[2] In recognition of the need for safeguards·against fraud and ambiguity in the sale or conveyance of land, the North Carolina General Statutes requires: "All contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." N.C. Gen. Stat. § 22-2. Because there was no written settlement agreement or memorialization signed by the Plaintiff in the present case, I would hold that the trial court erred by concluding that the Statute of Frauds does not apply.

I respectfully disagree with the majority's conclusion that the settlement agreement at issue in this case was in "total compliance with the statute of frauds." As the majority opinion recognizes, the parties informed the judge during trial that they had reached a verbal settlement agreement regarding their dispute. In open court, the counsel for the City of Newton informed the trial judge "the plaintiff and defendant have settled this case for the sum of $40,000 in exchange for which the plaintiff has agreed to execute a Quitclaim deed to the City for this tract of land that's depicted in Plaintiff's exhibit 1, the 3.122 acres." The trial court then conducted the following inquiry of Plaintiff:

THE COURT: Is that your agreement, sir?

[THE PLAINTIFF]: I don't have any choice. THE COURT: Well—

[PLAINTIFF'S COUNSEL]: You do have a choice.

THE COURT: I understand your sentiment, sir. But is that your agreement?

[THE PLAINTIFF]: Yes, that's my agreement.

The record and hearing transcript indicate that counsel for the City of Newton circulated a written proposed settlement agreement on 21 November 2007 via e-mail, seven days after the trial court's inquiry. Additionally, neither the parties nor their attorneys signed either of

---

2. *Davis v. Ely,* 104 N.C. 16, 23, 10 S.E. 138, 140 (1889).

POWELL v. CITY OF NEWTON

[200 N.C. App. 342 (2009)]

the two "Settlement Agreement and Release" documents included in the record.

In my view, (I) the unsworn exchange in court was insufficient to satisfy the Statute of Frauds; (II) emails from Plaintiff's counsel did not constitute an electronic signature to an agreement that was purportedly already agreed to and approved by the trial court; and (III) any agreement reached during the trial court session was conditional and not mutual because the "agreement" was subject to approval by the City Council.

I.

First, I do not agree with the majority's contention that the exchange between Plaintiff and the trial judge was sufficient to satisfy the Statute of Frauds. Although I acknowledge the majority's contention that other jurisdictions have found "oral stipulations" made in open court to satisfy the Statute, no North Carolina court has done so, and the facts of this case do not compel such a recognition. While a number of jurisdictions recognize a "judicial admission exception" to the Statute, even if this Court were to adopt such an exception, the exception would not be applicable to the statements made in the instant case.

In *Gibson v. Arnold*, 288 F.3d 1242, 1246-47 (10th Cir. 2002), the U.S. Court of Appeals for the Tenth Circuit noted that "virtually every court that has addressed the issue during the last twenty-five years has held that judicial admissions are an exception to the statute of frauds." However, such jurisdictions have generally limited the "judicial admissions exception" to admissions by sworn testimony, deposition, pleading, or sworn affidavit. *See, e.g., Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127-28 (3d Cir. 1997) (applying exception to admission of the contract in pleadings or testimony); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 142 (6th Cir. 1983) (applying exception to admission in deposition); *Litzenberg v. Litzenberg*, 514 A.2d 476, 480 (Md. 1986) (recognizing the exception applies to admissions by sworn testimony or deposition, or in pleadings). Here, Plaintiff was not under oath at the time of his statement, nor was there an "admission" to the existence of an agreement in any writings submitted to the court.

Further, I note that *Szymkowski*, on which the majority relies, is distinguishable. In *Szymkowski*, the Illinois Court of Appeals held the Statute of Frauds inapplicable to an oral settlement agreement

approved and evidenced in the trial court's order, entered the same day. *Szymkowski*, 432 N.E.2d at 1212. However, as the majority notes, Illinois' law contains a provision excepting sales "pursuant to a judgment or order of any court in this state" from the Statute of Frauds such that "any subsequent performance of the settlement would have been 'pursuant to order of the court' and therefore within the statutory exception to the Statute of Frauds." *Szymkowski*, 432 N.E.2d at 1211-12 (emphasis in first omitted). Because section 22-2 of the North Carolina General Statutes governing contracts for the sale of land contains no such statutory exception, *Szymkowski* is inapplicable.

Accordingly, I do not support the conclusion that the in court exchange acknowledging that the parties had reached a *verbal* agreement constituted an exception to the Statute of Frauds.

## II.

Additionally, I disagree with the majority's argument in the alternative, that a memorialization of the oral settlement agreement was *electronically* "signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." N.C. Gen. Stat. § 22-2. As the majority notes, " 'a writing or memorandum is 'signed' in accordance with the statute of frauds if it is signed by the person to be charged . . . .' " *Yaggy*, 7 N.C. App. at 598, 173 S.E.2d at 501 (quoting *Bishop*, 353 P.2d at 1025) (citations omitted).

Section 66-312(9) defines an "electronic signature" as "an electronic sound, symbol, or process attached to, or logically associated with, a record and executed or adopted by a person with the intent to sign the record." N.C. Gen. Stat. § 66-312(9). The official comment further explains that an electronic signature includes "one's name as part of an electronic mail communication." N.C. Gen. Stat. § 66-312(9) official commentary.

Here, the record on appeal contains no email communication originated by Plaintiff or his counsel. Indeed, the record shows no electronic communication containing any electronic signature by either Plaintiff or his counsel that would evidence an intent to sign the communication. Accordingly, I can find no evidence to support the conclusion that a writing was "signed" by either Plaintiff or his counsel. *See Sel-Lab Marketing, Inc. v. Dial Corp.*, 48 U.C.C. Rep. Serv. 2d 482 (S.D. N.Y. 2002) (holding series of emails memorializing agreement did not satisfy Statute of Frauds, in part, because none of the emails were signed by the party to be charged).

### III.

Finally, I would hold that the parties did not mutually agree to a settlement because the settlement was conditioned upon the approval of the City Council.

"Mutuality of promises means that promises to be enforceable must each impose a legal liability upon the promisor. Each promise then becomes a consideration for the other." *Wellington v. Dize Awning & Tent Co.*, 196 N.C. 748, 751, 147 S.E. 13, 15 (1929). In contracts involving the sale of realty, the issue has occasionally arisen that the promise of the purchaser is contingent upon his securing adequate financing. In such cases, this Court has held the purchaser's promise not illusory where it is "accompanied by an implied promise of good faith and reasonable effort" to secure such financing. *Mezzanotte v. Freeland*, 20 N.C. App. 11, 17, 200 S.E.2d 410, 415 (1973), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974).

Other cases, however, have held that where an agreement is made subject to the approval of another promisor, there can be no implied promise, and thus there is no mutuality of obligation to support the agreement. In *Hilliard v. Thompson*, for example, W.L. Thompson contracted with WH & G Realty Inc. to sell a piece of realty in Durham County for $70,000. 81 N.C. App. 404, 344 S.E.2d 589 (1986). The purchasers tendered a check to Thompson in the amount of $500, and the parties agreed that Thompson would take the contract home to be signed by his wife. That night, Thompson called one of the purchasers and said his wife wouldn't sign the contract unless the price was raised. The purchasers agreed to the new price, and it was agreed that all parties would meet to amend the contract the following day. The next day, Thompson returned the check and told the purchasers he had found a buyer willing to pay more. The property was sold to a third party before WH & G could meet the higher offer. WH & G sued, claiming breach of contract. The trial court awarded summary judgment for defendant based on lack of mutuality. In affirming the trial court's ruling, this Court stated:

> One of the terms of the alleged contract provided that William L. Thompson deliver to the plaintiffs a general warranty deed which would contain a fee simple marketable title. Without the signature of his wife Mr. Thompson could not have delivered such a deed. The plaintiffs would not have been liable on the contract if Mr. Thompson had sued them. There was not a mutuality of obligation.

*Id.* at 406-07, 344 S.E.2d at 590.

**POWELL v. CITY OF NEWTON**

[200 N.C. App. 342 (2009)]

This holding accords with the decisions of other courts that have considered the issue in situations more analogous to the one *sub judice*. In *Heuser v. Kephart*, the Tenth Circuit, applying "basic contract rules", reviewed a settlement agreement between a municipality and an individual that was contingent upon approval of the settlement amount by the City Council. 215 F.3d 1186, 1191 (10th Cir. 2000). "The district judge found that the consideration, which she also found had been specifically bargained for, was the [City] attorneys' promise to recommend the terms of the proposed settlement to their clients." *Id.* On appeal, the agreement was held unenforceable for lack of mutuality:

> The [County and City] were completely free to choose between two alternatives—they could accept the attorneys' recommendation and extend the offer, or they could reject the recommendation. Obviously, if the [County and City] were to choose the second alternative, [the other party] would have received nothing in exchange for their agreement. . . . Where, as here, a party "has an unfettered choice of alternatives, and one alternative would not have been consideration if separately bargained for, the promise in the alternative is not consideration."

*Id.* (quoting Restatement (Second) of Contracts § 77, cmt. b (1981)). *See also Mastaw v. Naiukow*, 306 N.W.2d 378, 380 (Mich. Ct. App. 1981) ("Since the Detroit Common Council had unfettered discretion to accept or reject the settlement, its options were in no way limited by the supposed settlement.").

In the present case, the attorney for the municipality made clear to the court that the agreement was contingent upon receiving the blessing of the City Council. Contrary to what the attorney stated, this was not "just a technicality." Indeed, the attorney's recommendation was susceptible to the City Council's rejection.

I would hold that because the purported agreement presented in open court was nonbinding and conditional, the trial court's colloquy with Plaintiff did not warrant the invocation of the doctrine of judicial estoppel in this case. As Defendants' counsel stated during the open court session, the purported agreement was still subject to approval by the City. Though characterized as a "mere technicality", this condition meant that Defendants were not bound by the agreement after the open court session until the City Council approved it, whereas the majority's holding indicates that Plaintiff was so bound by purported agreement after the open court

session and before the City Council approved the purported agreement. That result is not what was intended by the invocation of the doctrine of judicial estoppel.

In sum, I would hold that the trial court erred by concluding that Plaintiff entered into a "valid and binding" settlement agreement because (I) the record on appeal fails to establish the compliance with the Statue of Frauds, (II) the exchange of emails after the open court session did not constitute an electronic signature by Plaintiff's counsel to an agreement, and (III) the discussions during the open court session concerned a purported subject to approval by the City Council.