IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-588

Filed 2 April 2024

Orange County, No. 21 CVS 946

FRANKLIN GARLAND, Plaintiff,

v.

ORANGE COUNTY, ORANGE COUNTY BOARD OF COMMISSIONERS, Defendants,

and

TERRA EQUITY, INC., Defendant-Intervenor.

Appeal by defendant-intervenor from order entered 13 September 2022 by Judge Allen Baddour in Superior Court, Orange County. Heard in the Court of Appeals 28 February 2024.

> *Davis Hartman Wright, LLP, by R. Daniel Gibson, for plaintiff-appellee.*

> *James Bryan, Joseph Herrin, and John L. Roberts, for defendants-appellees Orange County and Orange County Board of Commissioners.*

> *Fox Rothschild LLP, by Kip D. Nelson, Matthew Nis Leerberg, and Nathan Wilson, and Manning Fulton & Skinner P.A., by Judson A. Welborn, for intervenor-appellant Terra Equity, Inc.*

ARROWOOD, Judge.

Terra Equity, Inc. ("defendant") appeals from order granting Franklin Garland's ("plaintiff") motion to enforce settlement agreement. On appeal, defendant

argues (1) the trial court erred by enforcing the settlement agreement, (2) plaintiff did not have standing to bring the underlying suit, and (3) the trial court erred by denying its motion to dismiss and motion for summary judgment. For the following reasons, we reverse the trial court and remand for dismissal of the action.

## I. Background

This dispute involves the zoning of three parcels of land adjacent to plaintiff's property ("parcels 1, 2, and 3"), on which plaintiff operates a truffle tree nursery and orchard. In January 2018, the Orange County Board of Commissioners ("the Board") zoned approximately 195 acres of property, including parcels 1 and 2, as Master Plan Developmental Conditional Zoning ("MPD-CZ"); parcel 3 was zoned as Rural Residential. On 15 June 2020, defendant applied to rezone all three parcels as a new MPD-CZ district. On 15 and 22 September 2020, the Board held public hearings regarding the rezoning application and allowed public comment through 24 September 2020. The Board approved the application on 20 October 2020. In the decision, the Board approved a 50-foot reduction in the 100-foot required setback between plaintiff's property and the development, which defendant did not request until the public comment period had closed.

On 16 December 2020, plaintiff and other individuals filed a complaint challenging the Board's approval of the rezoning. On 4 March 2021, the Orange County Superior Court held that the plaintiffs in the initial lawsuit lacked standing

and dismissed the suit with prejudice which was affirmed.

On 18 December 2020, plaintiff, acting pro se, filed a second complaint challenging the rezoning decision. In that complaint, plaintiff sought "to enjoin the Defendants from proceeding with the aforementioned project" and sought "injunctive relief because there is no other adequate remedy at law to preclude the violation[s]." Plaintiff alleged that the proposed development "is in violation of the UDO[,] . . . the Orange County Mission Statement[,] . . . [and] the Board of County Commissio[ners'] Goal and Priorities." The complaint also alleged that "Defendants have failed to perform environmental investigations and impact studies of Plaintiff's property." Plaintiff ultimately requested a permanent injunction "prohibiting Orange County from enforcing the Ordinance Amending the Orange County Zoning Atlas . . . and allowing development of the three parcels[.]" On 19 February 2021, plaintiff voluntarily dismissed his second lawsuit.

On 10 August 2021, Plaintiff filed a third complaint against Orange County and the Board. In this complaint, plaintiff sought to "challenge the rezoning of three parcels" and requested "a declaratory judgment that the Board of Commissioners' rezoning of the three parcels . . . was arbitrary and capricious, and . . . violated the Due Process Clause of the United States Constitution, 42 U.S.C. § 1983, and the Law of the Land Clause of the North Carolina Constitution and is therefore, illegal, null, and void." The third complaint alleged that "the Board of Commissioners failed to address, discuss, and otherwise evaluate the compatibility and suitability of the

proposed RTLP development" and "failed to comply with the requirements of its own zoning ordinance, the Orange County UDO" to support its claim of arbitrary and capricious zoning. Plaintiff further alleged that "[t]he Board . . . nor Orange County Staff made no investigation, findings, or recommendations regarding potential water quality impacts relating to the pond located on the Garland Property[,] . . . the increase in commercial vehicle traffic and related air pollution that would affect the pond and Orchard[,] . . . [or] the amount and flow of stormwater runoff to Plaintiff Garland's Property[.] Plaintiff also include facts regarding the alleged due process violation, such as the Board's decision to reduce the 100-foot, no-build setback between the parties' properties that occurred after the public comment period closed.

Defendant, as well as Orange County, filed a motion to dismiss the action, and the trial court denied the motions on 1 December 2021. Defendant then filed a motion for summary judgment on 31 January 2022, and the trial court granted the motion on all issues except the dispute regarding the 100-foot buffer on 3 May 2022.

The parties attended mediation in an attempt to reach settlement on the remaining setback issue. On 21 July 2022, defendant's counsel sent an email "to memorialize the terms of the parties' settlement reached at today's mediated settlement conference" and promising to draft a settlement agreement to circulate "for review and signature[.]" The following day, defendant's counsel sent plaintiff's attorney a proposed settlement agreement. On 29 July 2022, plaintiff's attorney sent an email with changes to the proposed settlement agreement. Defendant's counsel

communicated that defendant required plaintiff to execute the agreement by 5:00 p.m. on 1 August 2022.

On 8 August 2022, defendant's attorney sent an email stating that defendant would proceed to trial unless plaintiff could agree to the "current settlement structure." On 11 August 2022, plaintiff's counsel sent additional changes to the proposed settlement agreement. Plaintiff's counsel sent another email on 16 August 2022 agreeing to the initial draft agreement defendant's counsel sent on 22 July 2022, and defendant refused to sign the agreement.

Plaintiff moved to enforce the settlement agreement, and the trial court granted the motion on 13 September 2022. Defendant appealed from the trial court's order on 7 October 2022. On 13 March 2023, plaintiff filed a notice of cross-appeal from the 3 May 2022 order granting partial summary judgment.

Plaintiff later filed a motion to partially dismiss defendant's appeal on 17 July 2023, and defendant filed a motion to dismiss plaintiff's cross-appeal on 19 July 2023. On 23 February 2024, five days prior to the date scheduled for oral argument, plaintiff filed a petition for writ of certiorari, and defendant timely responded.

## II.     Discussion

### A.     Motions

Before reaching the merits of defendant's appeal, we address: (1) plaintiff's motion to partially dismiss defendant's appeal, (2) defendant's motion to dismiss

plaintiff's cross-appeal, and (3) plaintiff's petition for writ of certiorari.

### 1.    Plaintiff's Motion to Partially Dismiss Appeal

Plaintiff moved to partially dismiss defendant's appeal on the grounds that it did not properly notice appeal of the trial court's orders denying defendant's motion to dismiss and partially denying defendant's motion for summary judgment.

Pursuant to North Carolina statute, "[u]pon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment."  N.C.G.S. § 1-278 (2023).

> This Court has held that even when a notice of appeal fails to reference an interlocutory order, in violation of Rule 3(d), appellate review of that order pursuant to [N.C.G.S.] § 1-278 is proper under the following circumstances: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment.

*Tinajero v. Balfour Beatty Infrastructure, Inc.*, 233 N.C. App. 748, 758 (2014) (citation omitted).

Here, the trial court's denial of the motions to dismiss and for summary judgment were interlocutory, and defendant appropriately waited until final judgment to appeal those orders.  Under N.C.G.S. § 1-278, the orders denying the motions involved the merits and necessarily affected the judgment because had they been granted, the trial court would not have ordered to enforce the settlement agreement.  *See In re Ernst & Young, LLP*, 191 N.C. App. 668, 672–73, (2008), *aff'd*

*in part, modified in part and remanded on other grounds*, 363 N.C. 612 (2009) ("The order denying intervenor's motion to dismiss was an intermediate order that involved the merits and affected the final judgment because if it had been granted, the trial court would not have issued the Order to Comply."). We therefore deny plaintiff's motion.

### 2.    Defendant's Motion to Dismiss Cross-Appeal

Next, defendant argues that plaintiff's cross-appeal is untimely. On 7 October 2022, defendant appealed from the trial court's 13 September 2022 order enforcing the settlement agreement, which was a final judgment in the action below. Plaintiff did not file notice of cross-appeal until 13 March 2023. Plaintiff cites as a basis for the delayed filing his assertion that defendant failed to properly notice the appeals of the intermediate orders below. However, as discussed above, defendant's appeal encompassed the orders denying defendant's motion for summary judgment and motion to dismiss under N.C.G.S. § 1-278. Therefore, plaintiff had 10 days from defendant's appeal to file any notice of cross-appeal. N.C. R. App. P. 3(c)(3) ("If timely notice of appeal is filed and served by a party, any other party may file and serve a notice of appeal within ten days after the first notice of appeal was served on such party."). Because plaintiff filed his notice of cross-appeal after 17 October 2022, his cross-appeal was not timely, and we grant defendant's motion to dismiss the cross-appeal.

### 3.    Plaintiff's Petition for Writ of Certiorari

Finally, plaintiff's petition for writ of certiorari argues that this Court should issue certiorari because (1) plaintiff was not on notice that defendant sought to appeal interlocutory orders, (2) plaintiff acted promptly when he was put on notice, (3) the Court will already be reviewing the summary judgment order, and (4) plaintiff's appeal presents meritorious issues. As plaintiff acknowledges, certiorari is "an extraordinary writ" this Court has discretion to issue. *Cryan v. Nat'l Council of Young Men's Christian Ass'ns*, 384 N.C. 569, 570 (2023). "When contemplating whether to issue a writ of certiorari, our state's appellate courts must consider a two-factor test. That test examines (1) the likelihood that the case has merit or that error was committed below and (2) whether there are extraordinary circumstances that justify issuing the writ." *Id.* Extraordinary circumstances generally require "a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Id.* at 573 (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23, (2020)). After review of plaintiff's petition, in our discretion, we deny plaintiff's petition and address defendant's remaining arguments.

### B.     Settlement Agreement

Having disposed of the procedural issues, we now address the substantive issues raised by the appeal. Defendant  first contends that the trial court erred in enforcing the settlement agreement because there was no settlement agreement. We agree.

For purposes of appellate review, "[a] motion to enforce a settlement agreement is treated as a motion for summary judgment[.]" *Williams v. Habul*, 219 N.C. App. 281, 288 (2012) (citations and internal quotation marks omitted). "A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." *Smith v. Young Moving and Storage, Inc.*, 167 N.C. App. 487, 492–93 (2004) (quoting *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829 (2000)) (internal quotation marks omitted). Matters of contract interpretation are questions of law this Court reviews de novo. *Powell v. City of Newton*, 200 N.C. App. 342, 344 (2009) (citations omitted).

Here, defendant's counsel sent an email on 21 July 2022 "to memorialize the terms of the parties' settlement reached at today's mediated settlement conference" and promising to draft a settlement agreement to circulate "for review and signature[.]" While plaintiff argues this email evidences an agreement, there are numerous reasons the email is insufficient to support the formation of a contract.

First, because the email contemplates a future agreement for signature, it is at best an agreement to agree. *See Boyce v. McMahan*, 285 N.C. 730, 734 (1974) (holding that a document "to enter into a preliminary agreement setting out the main features as to the desires of both parties and to execute a more detailed agreement at a later date" was insufficient to create an enforceable contract).

Even assuming *arguendo* that this email would have been sufficient to support

- 9 -

a contract formation, it does not comply with statutory requirements for mediated settlement agreements. North Carolina statute requires that "[n]o settlement agreement to resolve any or all issues reached at the proceeding conducted under this subsection . . . shall be enforceable unless it has been reduced to writing and signed by the parties against whom enforcement is sought or signed by their designees." N.C.G.S. § 7A-38.1(l). Thus, in order for the email in this case to be enforceable, the statute requires it to be signed by defendant or defendant's designees. Defendant's trial counsel included his name below the body of the email, a common practice in email correspondence. Plaintiff argues this constitutes a signature under the Uniform Electronic Transactions Act ("UETA"), which requires that the involved parties have agreed, based on the context and surrounding circumstances, to conduct a transaction by electronic means. N.C.G.S. § 66-315(b). Here, given defendant's counsel's provision within the email that he would send a future draft of the agreement for signature, it is clear that defendant did not intend to execute the settlement agreement via an email electronic signature. Thus, UETA does not apply.

Furthermore, N.C.G.S. § 7A-38.1(l) requires a signature on the mediated settlement agreement by defendant or defendant's designees, and here, defendant's counsel is the only name the email contains. Defendant itself did not sign the email correspondence, and nothing in the record supports plaintiff's contention that defendant's counsel was a designee for purposes of the statute. Therefore, the 21 July 2022 email fails to meet the statutory requirements to create an enforceable

mediated settlement agreement.

Finally, plaintiff did not agree to the terms of defendant's proposed settlement agreement. The day after the 21 July email, defendant's counsel sent plaintiff's attorney a proposed settlement agreement that required the parties' signatures. On 29 July 2022, plaintiff's attorney sent an email with changes to the proposed settlement agreement, effectively rejecting defendant's offer and proposing a new agreement. Defendant's counsel communicated that defendant required plaintiff to execute the agreement it drafted by 5 p.m. on 1 August 2022, and plaintiff did not accept the settlement offer by that date; thus, the offer was withdrawn.

On 8 August 2022, defendant's attorney renewed their initial offer, stating that defendant would proceed to trial unless plaintiff could agree to the "current settlement structure." On 11 August 2022, plaintiff's counsel sent additional changes to defendant's proposed settlement agreement, again rejecting defendant's offer and proposing a new agreement. Plaintiff's counsel later sent an email on 16 August 2022 agreeing to defendant's initial draft, but because plaintiff had rejected defendant's offer and counteroffered with revisions to the agreement, this action did not constitute an acceptance. *See Normile v. Miller*, 313 N.C. 98, 104 (1985) ("This qualified acceptance was in reality a rejection of the plaintiff-appellants original offer because it was coupled with certain modifications or changes that were not contained in the original offer. . . . Additionally, defendant-seller's conditional acceptance amounted to a counteroffer to plaintiff-appellants."). For each of the foregoing

reasons, we find that the trial court erred in entering an order to enforce a settlement agreement.

## C. Motion to Dismiss

Defendant next argues that the trial court erred in denying its motion to dismiss. We agree.

Defendant contends that plaintiff lacked standing, and his third lawsuit fell outside the applicable statute of limitations. N.C.G.S. § 1-54.1 (limiting challenges to "any ordinance adopting or amending a zoning map or approving a conditional zoning district rezoning request" to 60 days). Even if we assume *arguendo* plaintiff had standing, his third lawsuit was not timely.

The Board approved defendant's application to rezone on 20 October 2020. While plaintiff filed his second lawsuit within the statute of limitations on 18 December 2020, he voluntarily dismissed his suit on 19 February 2021. Plaintiff then filed his third lawsuit on 10 August 2021, outside the statute of limitations.

Plaintiff argues that his third complaint was timely because his voluntary dismissal extended the statute of limitations under Rule of Civil Procedure 41(a)(1), which states, in relevant part, that "[i]f an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal[.]" N.C.G.S. § 1A-1, Rule 41(a)(1). However, the rule applies only when the new action "relates back" to the voluntarily dismissed action—when

the new lawsuit is "based upon the same claim as the original action. . . . If the actions are fundamentally different, or not based on the same claims, the new action is not considered a continuation of the original action." *Brannock v. Brannock*, 135 N.C. App. 635, 639–40 (1999) (cleaned up); *see also Losing v. Food Lion, L.L.C.*, 185 N.C. App. 278, 284 (2007) ("This Court has long held that the Rule 41(a) tolling of the applicable statute of limitations applies only to the claims in the original complaint, and not to other causes of action that may arise out of the same set of operative facts.").

Here, plaintiff's third lawsuit filed 10 August 2021 does not relate back to his second lawsuit dismissed on 19 February 2021. In the 10 August 2021 complaint, Plaintiff identified two causes of action: arbitrary and capricious rezoning and violation of his due process rights. In the original complaint, plaintiff simply stated that the proposed development "is in violation of the UDO[,] . . . the Orange County Mission Statement[,] . . . [and] the Board of County Commissio[ners'] Goal and Priorities." The new complaint alleged that "the Board of Commissioners failed to address, discuss, and otherwise evaluate the compatibility and suitability of the proposed RTLP development" and "failed to comply with the requirements of its own zoning ordinance, the Orange County UDO" to support its claim of arbitrary and capricious zoning.

The original complaint alleged that "Defendants have failed to perform environmental investigations and impact studies of Plaintiff's property[,]" and the

- 13 -

new complaint similarly alleged that

> [t]he Board . . . nor Orange County Staff made no investigation, findings, or recommendations regarding potential water quality impacts relating to the pond located on the Garland Property[,] . . . the increase in commercial vehicle traffic and related air pollution that would affect the pond and Orchard[,] . . . [or] the amount and flow of stormwater runoff to Plaintiff Garland's Property[.]

Even if we read these allegations as broadly similar, plaintiff in the original complaint sought "to enjoin the Defendants from proceeding with the aforementioned project" and sought "injunctive relief because there is no other adequate remedy at law to preclude the violation[s]." In the new complaint, plaintiff sought to "challenge the rezoning of three parcels" and requested "a declaratory judgment that the Board of Commissioners' rezoning of the three parcels . . . was arbitrary and capricious, and . . . violated the Due Process Clause of the United States Constitution, 42 U.S.C. § 1983, and the Law of the Land Clause of the North Carolina Constitution and is therefore, illegal, null, and void." While the new complaint also requested a permanent injunction "prohibiting Orange County from enforcing the Ordinance Amending the Orange County Zoning Atlas . . . and allowing development of the three parcels[,]" plaintiff made no reference in his initial complaint to the causes of action alleged in the new complaint. Nowhere in the original complaint does plaintiff allege the Board acted in an arbitrary and capricious manner; plaintiff alleged the Board violated its own policies, but this allegation does not itself state a claim for arbitrary and capricious rezoning. Further, the original complaint contained no

relevant factual or legal allegations supporting a due process violation.

The third complaint does not contain the same claims as the second complaint, thereby negating the ability to relate back to the timely complaint and meet the tolling requirements of Rule 41. Therefore, the complaint filed 10 August 2021 was untimely, and the trial court erred in denying the motion to dismiss.

## III.  Conclusion

For all the foregoing reasons, we hold the trial court erred in granting plaintiff's motion to enforce the settlement agreement and in denying defendant's motion to dismiss. Accordingly, we reverse and remand with instruction to dismiss plaintiff's third complaint with prejudice.

REVERSED AND REMANDED.

Judges COLLINS and STADING concur.